**Lee WILLIAMS, Appellee,**

v.

**Arthur L. McKENZIE, Warden, West Virginia State Penitentiary, Appellant (two cases).**

**Nos. 77–1679, 77–1711.**

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1978.

Decided May 3, 1978.

John R. Hoblitzell, Charleston, W. Va. (Kay, Casto & Chaney, Charleston, W. Va., on brief), for Lee Williams.

Frederick J. George, Deputy Atty. Gen., Charleston, W. Va. (Chauncey H. Browning, Jr., Atty. Gen., and John L. MacCorkle, Asst. Atty. Gen., Charleston, W. Va., on brief), for Arthur L. McKenzie.

Before WINTER and HALL, Circuit Judges, and FIELD, Senior Circuit Judge.

PER CURIAM:

This case presents an appeal by the State from a decision of the district court below granting a writ of habeas corpus to Lee Williams, a prisoner incarcerated in the West Virginia State Penitentiary, on grounds that an unduly suggestive pre-trial photographic display occurred and a cross-appeal by the petitioner from an order entered by the district court denying the issuance of the writ of habeas corpus due to alleged suppression of exculpatory evidence by the office of the Kanawha County, West Virginia prosecutor.

On the appeal, we reverse the district court's order which granted the writ of habeas corpus to Williams concerning the alleged impermissibly suggestive identification of him prior to the state court trial. Accordingly the judgment in Appeal No. 77–1679 is reversed and the case is remanded with directions that the district court enter an order denying the petition for writ of habeas corpus on this ground.

On the cross-appeal, while we hold that we can entertain petitioner's cross-appeal from the order entered by the district court holding that there was no suppression of exculpatory evidence in the state trial court below, we are nevertheless compelled to reverse the judgment in Appeal No. 77–1711, and remand to the district court for reconsideration concerning exhaustion of available state court remedies on the exculpatory evidence issue.

I.

On December 23, 1971, in the early afternoon, Sam Shaar, the proprietor of a small

grocery store in the City of Charleston, West Virginia, was sitting by his stove when two negro men came into the store. Mr. Shaar was 78 years old, wore glasses, and was in failing health suffering from bone cancer. A cash register was located at the end of the counter in the store approximately 20 feet away from him.

One of the individuals who came in was tall and the other was short. The short one walked toward the cash register and the tall one walked to a position behind Shaar. One of the two apparently asked for some "t-bones" and Shaar informed them that he did not carry fresh meat. The short individual nearest the cash register then opened it and began taking money out. When Shaar asked him what he was doing the tall individual behind him shot Shaar in the shoulder with a .25 caliber pistol. Shaar fainted.

The individuals fled the scene and almost immediately thereafter the Charleston City Police Department was notified of the shooting and commenced an investigation. Detectives McGinnis and Mahan immediately went to the hospital and questioned Mr. Shaar while he was in the emergency room. According to an "Activity Report" of the Charleston Police Department, dated December 23, 1971, and made a part of the record on this appeal, Detectives Mahan and McGinnis were informed by Shaar that his assailant was a colored male, young, about 6'1" with an orange CPO jacket on, and this was the individual who shot him, but that he did not get any money.

Also mentioned in the Activity Report of December 23, 1971, was an eye witness who said she saw a black male run from the scene and cut between her house and another house running eastward. This woman did not testify at the State trial however.

Thereafter, on December 28, 1971, two additional detectives of the Charleston City Police Department, namely Detectives Frye and Leonard filed an additional "Activity Report". These detectives had gone to the hospital to see Mr. Shaar on December 28, 1971, to see if he could identify some possible suspects in the robbery. The detectives took four pictures with them. Two were of the suspected robbers. All the pictures were of individuals of approximately similar height, build, complexion and race.

At this time, Mr. Shaar identified the petitioner, Lee Williams, as the person who shot him at the time of the armed robbery. Williams was identified as the taller of the two individuals. Shaar also separately identified one Robert Lee Brooks, II, as the individual who went through his cash register. Brooks was identified as the shorter of the two.

### II.

Arrest warrants were thereafter prepared for Williams and Brooks. Williams was arrested, indicted, tried and convicted of armed robbery by the then Intermediate Court of Kanawha County, West Virginia. The conviction occurred on May 1, 1972. Williams appealed to the Circuit Court of Kanawha County, but discretionary review was denied. No appeal was taken to the Supreme Court of Appeals of the State of West Virginia.

Thereafter, Williams filed original petitions for a writ of habeas corpus in the Supreme Court of Appeals of the State of West Virginia. Collateral review was denied in March and June of 1976.

Next, Williams filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of West Virginia on October 12, 1976. Following a Report and Recommendation of the United States Magistrate, to whom the matter had been referred, petitioner was given leave to amend and clarify the allegations contained in his pro se petition. Petitioner filed a clarification. As clarified, petitioner essentially alleged:

1. That he was denied due process of law by virtue of the photographic and in-court identification of him by Sam Shaar, the victim of the crime; and

2. That neither he nor his counsel were present at one particular stage of the state court trial which was conducted in the armed robbery case.

The district court issued an order to show cause, and counsel was appointed. An evidentiary hearing was held on December 22, 1976, and the case was fully briefed in the court below.

Following the completion of testimony, the district court awarded the writ of habeas corpus, and ruled in three particulars, as follows:

First. The photographic identification conducted by the detectives in the hospital on December 28, 1971, was impermissibly suggestive leading to a grave likelihood of irreparable misidentification;

Second. The initial Activity Report of December 23, 1971, reflecting the summary of the detectives' first interview with Mr. Shaar in the hospital constituted exculpatory evidence and it had not been furnished to counsel for the defendant prior to trial. The district court further held that exhaustion of state court remedies was not required concerning the exculpatory evidence issue since its alleged suppression was not discovered until the proceedings leading to the petition for a writ of habeas corpus in federal district court;

Third. The district court held that although the defendant was not present momentarily for a few seconds during his trial, he was actually standing in a doorway adjacent to the courtroom, and his absence for a momentary time period was not prejudicial to him. The state trial judge, when he noted that the defendant was standing in the doorway with his counsel, immediately cut off remarks being made by the prosecutor and the parties were given an adequate opportunity to object to this essentially technical violation of West Virginia law. The district court expressly found that the absence was for not more than a few seconds.[1]

Following the issuance of the writ by the district court, the Warden of the West Virginia State Penitentiary filed a timely notice of appeal.

After the Warden's notice of appeal was filed the district court reopened the record on the Warden's oral motion, and the court took additional evidence concerning its second holding that exculpatory evidence had been withheld from the defendant during his state trial. Testimony of the prosecuting attorney for Kanawha County, who was chief trial counsel in the prosecution of the petitioner was taken. The district court then rescinded, in part, its previous order granting the writ of habeas corpus on the exculpatory evidence point.

Thus, the district court concluded that the Kanawha County prosecuting attorney did in fact make his entire file available to trial counsel for the petitioner prior to his state trial which file included the activity report summarizing the December 23, 1971 interview of Mr. Shaar and his initial description of the assailant. Consequently, although the writ was awarded, it was awarded only on grounds relating to the suggestiveness of the photographic identification.

The petitioner cross-appealed from the revised holding of the district court concerning exculpatory evidence. Essentially, petitioner contends that the district court erred in finding that the exculpatory evidence was not in fact withheld. Alternatively, if the district court was correct in concluding that the entire file of the Kanawha County prosecuting attorney was made available to trial counsel for the defendant in state court, then, that attorney is guilty of incompetence because he did not cross-examine Mr. Shaar about the apparent inconsistent descriptions given initially and then at trial or attempt to impeach him through the testimony of the two detectives who elicited the first description of the assailant.

### III.

### APPEALABILITY—APPEAL NO. 77–1711

■ A threshold question of appealability is presented in this case. The state filed a timely notice of appeal from the district

1. This third holding is not the subject of either the appeal or cross-appeal before us.

court order issuing the writ of habeas corpus. Notwithstanding that notice of appeal, and the general rule that the filing of such a notice deprives the district court of jurisdiction to act further in most instances in a case formerly before it, the district court nevertheless reopened the habeas case for the taking of the additional testimony of the Prosecuting Attorney of Kanawha County concerning the exculpatory evidence issue. Presumably, the motion leading to a reopening of the case was made pursuant to Rule 60(b), Federal Rules of Civil Procedure.[2]

Thereafter, as noted, the district court reversed its previous ruling, denied habeas relief on the exculpatory issue, and the petitioner then noted a cross-appeal.

The first question presented is whether we can even entertain petitioner's cross-appeal concerning exculpatory evidence in light of the State's earlier notice of appeal. 7 J. Moore & J. Lucas, *Moore's Federal Practice*, § 60.30[2], at 419–24 (2d ed. 1975); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2873 (1973); *cf. Rakes v. United States*, 163 F.2d 771 (4th Cir. 1947) (interpreting the "newly discovered evidence" rule under F.R.Cr.P. 33).

We hold that on the facts of this particular case, and especially since the appeal was not docketed in this court at the time the district judge reopened the habeas hearing for the taking of additional testimony, that the entertainment of the F.R.C.P. 60(b)(2) motion was appropriate.

**2.** The motion was orally made on the basis of "newly discovered evidence." F.R.C.P. 60(b)(2). To us, there is a substantial question presented concerning the sufficiency of the allegations contained in that oral motion made by the State under F.R.C.P. 60(b)(2). That Rule requires that the "newly discovered evidence [was such that] by due diligence [it] could not have been discovered in time to move for a new trial under Rule 59(b), [i. e. within 10 days of the entry of judgment]."

In the first hearing before the district court on the federal habeas corpus, although the assistant prosecuting attorney who tried the case was present, he was not called to negate the testimony of state trial counsel on the suppression of exculpatory evidence. No evidence was

Support for our holding is drawn from the recent ruling of the Supreme Court in *Standard Oil of California v. United States*, 429 U.S. 17, 97 S.Ct. 31–2, 50 L.Ed.2d 21 (1976). To us, the pre-mandate leave to proceed under Rule 60(b)(2) in the district court below upon the facts presented to it is sufficiently analogous to the post mandate appellate leave requirement struck down in *Standard Oil* to afford proper jurisdiction in the court below to proceed with reopening of the habeas case.[3] We caution, however, that a Rule 60(b)(2) motion is not a procedural vehicle for an automatic retrial *de novo* once a party has lost in the district court below and a notice of appeal has been filed. This is especially true when the record does not reflect why the evidence sought to be introduced pursuant to Rule 60(b)(2) was otherwise unavailable at the first hearing.

We hold only, on this record, that the reopening of the suit was not error, and, that the substance of petitioner's cross-appeal is properly before us.

## IV.

## EXCULPATORY EVIDENCE—APPEAL NO. 77–1171

Through the diligent efforts of counsel appointed in the district court, petitioner discovered, and asserted in the habeas case below that the first description of his assailant by Mr. Shaar, as contained in the initial Activity Report of December 23, 1971, constituted exculpatory evidence.

presented until the State reopened the case with the testimony of the prosecuting attorney himself. No showing of unavailability was made on the record before us. *See* F.R.C.P. 60(b)(2); 7(b).

Because of our disposition of the cross-appeal, *post*, in part IV of this opinion, we need not further discuss any inadequacy of the oral motion made under F.R.C.P. 60(b)(2).

**3.** Disregarding exhaustion for the moment, had the district court not ruled upon the state's motion to reopen due to newly discovered evidence under F.R.C.P. 60(b)(2), an appeal could have been rendered largely academic. We hold *only* that permission of this court was not a necessary precondition for the district court to entertain the Rule 60(b)(2) motion.

Counsel for petitioner presented testimony from Williams' state trial counsel to the effect that he was not furnished with copies of the police report and the police investigation into the shooting of Mr. Shaar nor did he have any idea whether there was any conflict between the information contained in that report and Mr. Shaar's testimony at trial.

Based upon this testimony, the district court initially concluded that the evidence was exculpatory and had been suppressed.

Thereafter, the motion to reopen, discussed above in Part III of this opinion was filed, and testimony of the Prosecuting Attorney for Kanawha County, who was chief prosecution counsel in the trial of Williams was thereafter taken, and the district judge accordingly reversed his prior holding. He concluded that the evidence, although exculpatory, was not in fact suppressed.

Petitioner countered by arguing alternatively, that if the initial Activity Report was not suppressed, then Williams' state trial counsel was guilty of ineffective assistance of counsel, and the writ should nevertheless have issued because of counsel's failure to utilize Shaar's first description of his assailant for cross-examination and as impeachment material. Presumably Shaar could have been questioned about his comments to the detectives who first investigated the case, and then they could have been called to the stand to testify that Shaar's trial testimony was inconsistent with this first description of his assailant. *See: Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977).

On this cross-appeal, petitioner again argues in the alternative as he did in the district court below. We decline to address those issues since the district court also found that exhaustion of state court remedies had not occurred regarding the exculpatory evidence issues. We disagree with the district court that the mere discovery of the issue during the prosecution of a writ of habeas corpus, under 28 U.S.C. § 2254 is alone enough to dispense with the exhaustion requirement.

Petitioner had not alleged, nor was there any showing made in the record in the district court that there was no longer a state court remedy available to Williams or that exhaustion would have been futile for some other reason. *See: e. g.*, 28 U.S.C. § 2254(b). Upon remand, the district court may allow petitioner to file a second amended petition for a writ of habeas corpus, if he chooses to do so, and in lieu of proceeding to seek collateral review in the state courts, petitioner should be notified of his apparent failure to exhaust his state court remedies. He should be advised that his failure to properly plead justification for such non-exhaustion of state court remedies will result in the dismissal of his petition for a writ of habeas corpus on the exculpatory issues.

## V.

### THE IDENTIFICATION—APPEAL NO. 77–1679

■ With the benefit of the trial transcript from the state court trial before it, and with the benefit of live testimony taken during the plenary hearing, the district court principally concluded that based upon the facts presented in the instant appeal: (1) the photographic display of the four possible suspects (including the two who were ultimately identified as the robbers) shown to Mr. Shaar in the hospital on December 28, 1971, was unduly suggestive; and (2) that from the totality of the circumstances presented in the case, there was a very substantial likelihood of irreparable misidentification. *See Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977), decided after the district court entered its order granting habeas relief on the identification issue.

While we are solicitous of the careful analysis made by the district judge concerning the facts presented to him, we disagree that the photographic identification was unduly suggestive. Consequently, we need not look to whether or not the totality of the circumstances gave rise to a substantial likelihood of irreparable misidentification. On that point, while the testimony of Sam

Shaar is indeed weak, it was sufficient to be admissible, and thereafter its weight was for the jury. We perceive no due process violation.

The district court predicated its finding of suggestiveness upon certain key facts: (1) that only four photographs were shown to Shaar by the detectives; (2) that Shaar was asked if the pictures were of "the two fellows that robbed and shot him." (State Court trial testimony of Detective Leonard, Tr. 106, A–194); and (3) that when he gave the first description of his assailants to the detectives on December 23, 1971 when he had just been shot, he mentioned only one assailant with an orange CPO jacket. Thus, in light of Shaar's physical condition and mental state, which were concededly rather poor, the use of only four photographs together with the mention of two suspects made the photographic display unduly suggestive.

However, when the testimony of Detective Leonard which was taken during the state trial out of the presence of the jury is closely analyzed, the suggestiveness disappears. Shaar obviously knew there were two robbers without prompting from Leonard. When he viewed the four photographs, he did not simply identify Williams as one robber and Brooks as the other.

Instead, as Leonard recapped, Shaar identified Williams as the one who shot him and Brooks as the one who cleaned out the cash register. Leonard testified:

> He looked at Floyd Hairston's picture, put it aside. He looked at June Bug Brown's picture and placed it aside. He got to the picture of Lee Williams. He stated that "this is the big fellow, this is the fellow that shot me." He put that aside. He went to the last picture, which was Robert Lee Brooks. He said, "This is the fellow that cleaned out the cash register, this is the shorter fellow." (State Trial testimony, Tr. 30, A–118).

This is persuasive evidence that Shaar remembered the duo even before any suggestive comments by Detective Leonard.

Finally, there is no *per se* requirement that at least six photographs should have been shown to Shaar. *See Manson v. Brathwaite, supra,* decided after the district court ruled on the suggestiveness aspect of this case.

77–1679—REVERSED AND REMANDED WITH DIRECTIONS TO DENY THE WRIT.

77–1171—REVERSED AND REMANDED FOR RECONSIDERATION OF EXHAUSTION OF AVAILABLE STATE COURT REMEDIES.