60122. CAYLOR v. THE STATE.

BANKE, Judge.

The appellant was convicted of rape, aggravated sodomy, and armed robbery and was sentenced to three consecutive terms of life imprisonment. He appeals from the denial of his motion for new trial.
*Held:*

The victim was abducted at gunpoint from the parking lot of an Atlanta shopping mall at around midnight on April 3, 1979, as she was approaching her car to go home from work. The assailant forced her to enter the car and drive to another parking lot, where he repeatedly raped and sodomized her. Before leaving, he took various items from her purse. She testified that the ordeal lasted a total of about three hours and that she had numerous opportunities to observe the assailant during that period of time. She described him to police immediately afterwards as a white male, 5′ 8″ tall, weighing about 170 pounds, of medium build, with sandy brown, collar-length hair, and wearing a plastic bandage over his nose. She testified at trial that she could not recall at the time she gave this description whether or not the assailant had a moustache.

With the victim's help, a police artist prepared a composite drawing of the assailant, without moustache, which was circulated to various security and other personnel at the shopping mall from which she had been abducted. On May 4, 1979, less than a month later, the appellant was detained there by police and security personnel as the result of an incident in which he became involved. Despite the fact that he had a full moustache, a similarity was perceived between him and the composite drawing, due in part, undoubtedly, to the fact that he had a bandage on his nose. A detective involved in the rape investigation was accordingly summoned to the mall to question him. The appellant was released after the questioning was completed.

The detective primarily responsible for the rape investigation was out of town on May 4 but was informed of the incident when he returned on May 7. As the detective was preparing to go to the

appellant's residence to question him, he learned that the appellant was already under arrest due to an incident which had occurred at another shopping center that same day. He immediately questioned the appellant, took his photograph, and prepared a photographic lineup by placing it with photographs of four other white males. He carried these to the victim at her place of employment and asked her if she could identify her assailant from among them. She looked through the photos for about 30 seconds and identified the appellant without hesitation or equivocation, saying that she would stake her life on the identification. She also made a positive identification of the appellant at trial. In corroboration of the victim's identification, the state also introduced the opinion of a microanalyst from the State Crime Laboratory to the effect that a pubic hair found in the victim's car was "substantially similar" to a pubic hair sample which has been obtained from the appellant.

At the time the appellant was arrested and his photograph taken, he had a noticeable cut on his nose. Although his was the only photograph in the display which evidenced such a cut, the victim testified that this had not been a factor in her identification. In his defense, the appellant introduced a driver's license bearing an examination date of April 4, 1979, the day after the night of the rape. The license photograph revealed no cut or bandage on his nose. The defendant explained that he had received a cut on his nose on May 2, 1979, five days before his arrest. He characterized the injury as one "where it was four days later that it was not obvious." The appellant also introduced evidence purporting to establish an alibi defense.

The appellant's primary contention on appeal is that the photographic display was impermissibly suggestive and that the trial court therefore erred in denying his motion to suppress the victim's identification testimony. He also contends that the trial court erred in allowing evidence of other alleged offenses. *Held:*

1. We have examined copies of the five photographs displayed to the victim and, with the possible exception of the cut on the appellant's nose, find no trace of suggestiveness. Each photograph is of a white male, of medium build, bearing a full moustache. None of the men in the four control photos appear strikingly dissimilar to the appellant, and one, in fact, bears an extraordinary resemblance to him. Although the cut on the appellant's nose certainly had the potential for influencing the victim's choice, we cannot dismiss her testimony that it played no part in her identification, particularly in view of the appellant's own testimony (corroborated by our observation of the copies of the photographs included in the record on appeal) that the cut was not obvious.

The appellant further complains that since each of the four

control photographs was of a police officer, the victim might possibly have seen one or more of the men during a visit to the police station made in connection with the case. Such speculation hardly provides us with an objective basis for concluding that the identification procedure was impermissibly suggestive, particularly in view of the victim's testimony that she had never before seen any of the other men. The appellant also asserts that the men in the control photographs did not fit the description which the victim had given police after the rape; however, this is totally irrelevant to the issue of whether the photographic display was suggestive. Cf. *Jenkins v. State,* 146 Ga. App. 458, 460 (4) (246 SE2d 466) (1978). In any event, we do not perceive such a dissimilarity from our own observations. Finally, there is no merit in the appellant's contention that since he was in custody at the time his photograph was shown to the victim an actual lineup should have been conducted rather than a photographic lineup. See U. S. v. Gidley, 527 F2d 1345 (5th Cir., 1976) cert. den. 429 U. S. 841 (97 SC 116, 50 LE2d 110).

2. The trial court did not err in allowing into evidence testimony concerning the appellant's detention on May 4 at the same shopping mall from which the victim had been abducted less than a month earlier, despite the appellant's objection that this placed his character in issue. The evidence was relevant to explain why the appellant was questioned about the case three days later, following his arrest on unrelated charges at another shopping mall. Furthermore, the potential prejudice from admitting the evidence was minimal, since the jury never learned the reasons for the appellant's May 4th detention.

3. The appellant volunteered the information on cross examination that the charge for which he had been arrested on May 7 was public drunkenness. The assistant district attorney thereupon asked him, "That's not the only charge that was lodged against you, was it, Mr. Caylor?" Defense counsel immediately objected, and the objection was sustained. The appellant contends that the trial court erred in denying his subsequent motion for mistrial. However, in light of the fact that the objection was sustained and the question never answered, we find no abuse of discretion. Furthermore, we find no abuse of discretion in the court's failure to issue cautionary instructions in the absence of a request for them.

4. The trial court did not err in rejecting the appellant's requested charges on the standard of proof required to convict on circumstantial evidence. Such a charge is required only when the state's case is totally dependent upon circumstantial evidence, even in the face of a request for the charge. See *Arnett v. State,* 245 Ga. 470 (4) (265 SE2d 771) (1980). See also *DePalma v. State,* 228 Ga. 272 (1)

(185 SE2d 53) (1971); *Gaines v. State,* 232 Ga. 727, 730 (208 SE2d 798) (1975).

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

SUBMITTED JUNE 6, 1980 — DECIDED JULY 16, 1980 —
REHEARING DENIED JULY 31, 1980.

*Richard M. Loftis,* for appellant.

*Randall Peek, District Attorney, Jonathan C. Peters, Assistant District Attorney,* for appellee.