**STATE of Iowa, Appellee,**

v.

**Isaac Lesley NEAL, Jr., Appellant.**

**No. 83–129.**

Supreme Court of Iowa.

July 18, 1984.

85

Charles L. Harrington, Appellate Defender, and Fern Shupeck, Asst. Appellate Defender, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Marcia Mason, Asst. Atty. Gen., and William E. Davis, Scott County Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, LARSON, SCHULTZ and WOLLE, JJ.

SCHULTZ, Justice.

This is an appeal from a conviction and life sentence for first-degree kidnapping arising out of the abduction and sexual abuse of a sixteen-year-old female. *See* Iowa Code §§ 710.1(3), 710.2. Defendant, Isaac Lesley Neal, Jr., claims his trial counsel was ineffective for failing to object to pretrial identification procedures. He also contends the evidence was insufficient to identify him as the perpetrator and sustain his conviction. Finding no merit in either assignment of error, we affirm.

On the evening of August 26, 1982, the victim was accosted while walking on a Davenport street and shoved into a car by an unknown male. During the thirty to forty minute abduction, the assailant forced his captive to perform oral sex on him as he drove around. Later on, he stopped and made the woman disrobe. When a police car happened by, the abductor quickly moved to another location. Once there, he attempted anal intercourse. Apparently, he was frustrated by his lack of success and ordered the victim out of the car. As they were leaving the automobile, she tried to escape, and a scuffle ensued. Although the assailant stabbed her in the neck, the victim bit his arm and succeeded in breaking away. She then ran to a nearby house where the police were summoned. Upon questioning by an investigating officer, the woman described her assailant and the automobile. Armed with a detailed description, the police recovered the vehicle from a city street a couple of hours later and subsequently traced ownership to defendant's fianceé. The car was positively identified by the victim the next day. Later, she was also able to identify defendant as the perpetrator from a photographic array, at a corporeal lineup and at trial. In addition to this brief background

summary, other facts will be set out when necessary to resolve the issues.

*I. Ineffective assistance of counsel.* Initially, defendant claims he received ineffective assistance of counsel because his defense attorney did not challenge impermissibly suggestive procedures that resulted in his identification as the perpetrator. He maintains his counsel should have moved to suppress the two photographic and lineup identifications prior to trial. At the very least, he asserts, his attorney should have objected at trial to the evidence concerning the pretrial and the in-court identifications by the victim. In sum, he contends these failures denied him adequate representation in violation of his Sixth Amendment right to receive competent legal assistance.

■■■ Defendant's first assignment of error stems from trial counsel's alleged inadequacies in dealing with the identification procedures, procedures now being challenged for the first time on appeal by different counsel. Although issues, including constitutional claims, are deemed waived if not raised in district court, we are not precluded from reviewing a nonpreserved issue resulting in a denial of effective representation. *State v. Tobin,* 333 N.W.2d 842, 844 (Iowa 1983). *See also State v. Clark,* 351 N.W.2d 532, 535 (Iowa 1984); *State v. Rhiner,* 352 N.W.2d 258, 261 (Iowa 1984). Thus, when the record is adequate to adjudicate an ineffectiveness claim and nothing further would be gained by an evidentiary hearing before the trial court, we can decide the issue on direct appeal rather than reserving it for postconviction proceedings. *See State v. Goff,* 342 N.W.2d 830, 838 (Iowa 1983); *State v. Schoelerman,* 315 N.W.2d 67, 71 (Iowa 1982). Here, both photographic displays, a picture of the corporeal lineup and the circumstances surrounding each pretrial identification were admitted and fully explored at trial. Moreover, since the victim's identification of defendant formed the core of the prosecution's case, no conceivable trial tactic or strategy justifies a failure to object to the identification procedures if

they were indeed impermissibly suggestive. In sum, we perceive no procedural or evidentiary barriers to considering the merits of defendant's identification-ineffectiveness claim.

■■ Recently in *State v. Miles,* 344 N.W.2d 231, 233–35 (Iowa 1984) we elaborated on the showing that must be made to prevail on an ineffective assistance claim. Essentially, defendant must establish by a preponderance of evidence that (1) his counsel breached an essential duty and (2) prejudice resulted therefrom. *Id.* at 233–34. Shortly after *Miles,* the United States Supreme Court in *Washington v. Strickland,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), developed a comprehensive framework for evaluating ineffective assistance claims. Under the *Washington* formulation, defendant must show (1) counsel's performance was deficient and (2) the deficient performance prejudiced his defense. The first prong of the *Miles* and *Washington* tests is the same and in the words of the Supreme Court requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at ——, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. As we conclude that defendant cannot satisfy the first requirement of Washington, we do not reach or discuss the prejudice issue.

Defendant can only prevail on his ineffectiveness claim if he can establish by a preponderance of the evidence that the identification procedures were unconstitutional. In other words, counsel's performance was not deficient if he failed to exclude admissible evidence.

■■ Defendant contends both of the photographic arrays and the lineup were impermissibly suggestive. To succeed on this claim, defendant must establish that the procedures were suggestive and the irregularities gave rise to a substantial likelihood of irreparable misidentification in the totality of the circumstances. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *State v. Newman,* 326 N.W.2d 788, 794 (Iowa 1982); *State v.*

*Mark,* 286 N.W.2d 396, 403–04 (Iowa 1979). Short of this, the identification evidence and its shortcomings or credibility are for the jury to weigh. *Manson,* 432 U.S. at 116, 97 S.Ct. at 2254, 53 L.Ed.2d at 155; *Newman,* 326 N.W.2d at 794; *Mark,* 286 N.W.2d at 405. Thus, we must first consider whether the procedures used to identify defendant were suggestive. If not, the evidence was not suppressible, and any shortcomings in the identifications only go to the weight or credibility assigned to the evidence by the fact finder. Conversely, if the procedures were impermissibly suggestive, we must determine whether, in the totality of the circumstances, the identification of defendant as the perpetrator was nonetheless reliable. Because our de novo review, *Newman,* 326 N.W.2d at 793, convinces us none of the procedures used to identify defendant were suggestive, we will not discuss the reliability issue.

While the victim was in the hospital shortly after the assault, the police showed her a set of photographs of black males. Defendant's picture was not included, and the victim made no identification. No issue is made concerning this procedure.

On September 1, in the first contested display, the victim was shown five mugshots of black males. Although she would not make a positive identification, she did point out Neal as most closely resembling her assailant. Defendant asserts this procedure is faulty.

■■■ He first complains because there is no showing by the State that a photographic identification rather than a lineup was necessary. The use of a photographic array rather than a corporeal lineup in the investigative stage is usually constitutionally permissible. *See* Sobel, *Eyewitness Identification* § 5.1(b) n. 3 cases cited therein (2nd Ed.1983). As the Supreme Court noted in *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968):

Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate through scrutiny of photographs.... We are unwilling to prohibit employment [of photographic identifications], either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement.

Although defendant may have been a suspect at this point, he had not yet been arrested. We find no merit in this complaint.

■■■ The basis of defendant's next complaint is that the officer who presented the five mugshots casually mentioned that the photo array included a police suspect. Aside from stating the obvious, this casual observation does not support defendant's contention that the officer pressured the victim into making an identification. Although a statement by an officer that a lineup or array includes a possible suspect is a factor to be considered in determining whether the procedures were suggestive, *Martinez v. Turner,* 461 F.2d 261, 264 (10th Cir.1972), this comment alone does not taint the identification procedures. To suggest, as defendant apparently does, that a witness would not recognize, without prompting from an officer, that a photographic array probably contained a suspect is to underestimate average intelligence. *U.S. v. Gambrill,* 449 F.2d 1148, 1151 n. 3 (D.C.Cir.1971). *See also State v. Bolden,* 196 Neb. 388, 391–92, 243 N.W.2d 162, 164 (1976) (Identification based in part upon photographs of defendant shown to victim of crime is not objectionable because officer stated the array included photograph of suspect since officer did not in any way suggest which photographs were of the suspect or give any indication why the individual was suspected of having committed the robbery).

As in *Bolden,* the officer here said no more than that the array contained a suspect. He gave no indication which photograph depicted the suspect, nor did he disclose what prompted the police to focus their suspicions on the suspect. More im-

portantly, the victim refused to commit herself to positive identification, but merely stated that while she believed it was defendant, she could not be sure. Contrary to defendant's contention that the officer's comment pressured the witness into making an identification, her refusal to positively identify her assailant until she was absolutely sure shows she was not amenable to pressure.

Defendant's final complaint about this photo identification concerns the disparity in the physical characteristics of the men depicted. In particular, he claims only his photograph fit the description of the hairstyle and hair length furnished by the victim, the facial characteristics of the other individuals varied significantly from his and the height scales in the background of the photos clearly indicated that only the defendant fell within the height range given by the victim. Based on our review of the photos, we conclude only the height claim merits extended discussion.

■ First, the differences in hairstyles and facial characteristics do not make the defendant stand out in sharp contrast to the others. Additionally, all but one of the individuals sported a mustache similar to that described by the victim. Moreover, due process does not require the police to scour their files to come up with a photographic display that would eliminate all subtle differences between individuals. *United States v. Bubar,* 567 F.2d 192, 199 (2d Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977). Finally, a perusal of the cases in which the procedures were not found suggestive clearly refutes defendant's contention that this array was unconstitutional. *E.g., United States v. Mefford,* 658 F.2d 588 (8th Cir. 1981), *cert. denied,* 455 U.S. 1003, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982) (suspect was only man in lineup who was within age range described by witness); *United States v. Smith,* 602 F.2d 834 (8th Cir.), *cert. denied,* 444 U.S. 902, 100 S.Ct. 215, 62 L.Ed.2d 139 (1979) (suspect only person in blue bib overalls matching description of robber); *Haberstroh v. Montanye,* 493 F.2d 483 (2d Cir.1974) (in display of three photographs, only suspect matched the description); *United States v. Harrison,* 460 F.2d 270 (2d Cir.), *cert. denied,* 409 U.S. 862, 93 S.Ct. 152, 34 L.Ed.2d 110 (1972) (that defendant was only clean-shaven individual in photo array was not necessarily striking difference as to make him stand out prominently from others); *United States v. Bostic,* 360 F.Supp. 1300 (E.D. Pa.), *aff'd,* 491 F.2d 751 (3d Cir.1973) (only suspect's photo showed scar on forehead); *Caylor v. State,* 155 Ga.App. 489, 270 S.E.2d 924 (1980) (suspect was only person with cut on nose in photo array but victim said not a factor in identification); *Aker v. State,* 403 N.E.2d 847 (Ind.App.1980) (suspect was only person shown with a beard but four others had mustaches); *Commonwealth v. Mobley,* 369 Mass. 892, 344 N.E.2d 181 (1976) (suspect's photo was the only one with ski cap similar to one worn by robber).

■ As these cases amply demonstrate, even rather startling differences between defendant's characteristics and those of others depicted in a photo display have not resulted in a finding of suggestiveness. The only feature of this array that is even remotely suggestive is the fact that only defendant's height fell within the range described by the victim. Nevertheless, this feature does not render the array suggestive. First, the height charts are not a single and riveting characteristic of the display. Indeed, they are hardly noticeable unless one carefully scrutinizes each and every photo. Moreover, two photographs, defendant's and another, do not reveal the heights even on close examination. Thus, while it is perhaps unfortunate all the individuals depicted were not in the exact height range, the existence of the height charts is not, without more, suggestive. In any event, even though the photos of defendant and another were the only two realistic candidates heightwise, the victim refused to positively identify defendant as her assailant until she was shown a second photographic array (without height charts) containing a very recent photograph of de-

fendant. This brings us to a consideration of the second display.

■ In the second array, the victim was shown a recent snapshot of defendant taken by the police. Unlike the first identification, she immediately and with conviction picked out defendant as the perpetrator. Defendant complains that this identification was tainted by the possibility that the victim would remember her first identification and substitute that image rather than the image of the person who assaulted her. Several circumstances nullify this claim. The victim did not make an identification at the first display. Additionally, our own review of the two photographs, taken over two years apart, reveals distinct differences between the image portrayed in the two photos. The second photo shows quite a different hairstyle and a much more mature individual. This display was shown to the victim on September 13, almost two weeks later. It closely resembles defendant's picture taken during the lineup on October 8, a time much closer to the second photo and the assault. We find defendant's first picture did not mislead the victim into making the subsequent identification.

■ In addition to again complaining about his distinctive appearance in the second display, defendant asserts the second array was suggestive because it only contained four snapshots and his picture had a noticeably darker background which focused greater attention on his snapshot than the others contained in the spread. We cannot agree. There is no per se requirement that at least six photographs must be used in a display. *Williams v. McKenzie*, 576 F.2d 566, 572 (4th Cir.1978). *See also Haberstroh*, 493 F.2d at 484 (three photographs not so suggestive as to cause likelihood of misidentification). Additionally, characteristics of a photo such as a darker background or greater or sharper contrast are of no consequence in a suggestiveness claim. *Bubar*, 567 F.2d at 198–99.

Defendant also objects to his lineup on much the same basis. That is, his features were so unlike the other men in the lineup as to render it impermissibly suggestive. Even a quick glance of the photo taken of the corporeal lineup belies the merit of these complaints.

In summary, neither the photo arrays nor the circumstances surrounding the defendant's identification in any way substantiate his claims that the procedures were suggestive or irregular.

■ *II. Sufficiency of the evidence.* Defendant preserved error on the sufficiency of the evidence issue by his motions for judgment of acquittal at the close of the State's evidence and again at the end of the case and in his post-trial combined motion in arrest of judgment and for new trial. In considering a sufficiency of the evidence claim, this court considers the evidence in the light most favorable to the State, and defendant's conviction must be upheld if it is supported by evidence that would convince a rational trier of facts that defendant is guilty beyond a reasonable doubt. *State v. Bass*, 349 N.W.2d 498, 500 (Iowa 1984). Applying this standard, we find the evidence was sufficient to establish that defendant was the perpetrator. The victim identified defendant as her attacker. In addition to that identification, much circumstantial evidence connected defendant with the crime. The vehicle used in the commission of the crime belonged to defendant's fiancée. His palm print was found on the driver's door handle. Defendant's fiancee testified that defendant had driven the car only one time and further indicated that she had driven the car afterwards and just prior to the evening of the crime. Defendant's print was not smeared or marred by any cross-thatching, strongly suggesting that no one drove the car after his print was left on the handle.

The victim also testified that at one point in her abduction, defendant was surprised by a police car. At a time consistent with the commission of the offense, a Davenport police officer, who had known defendant for over five years, testified that he observed him driving a car similar to the vehicle used in the abduction.

During his testimony, defendant denied committing the offense and contended that he was at his fiancee's house during the attack. He claims his alibi defense was corroborated by his fiancee and her mother. However, neither of these witnesses could attest to defendant's whereabouts after they went to bed at approximately 8:15–8:30 p.m. on August 26 until the next morning. His fiancee's car was still parked on the street when she went upstairs to bed. Contrary to corroborating his alibi, his own witnesses' testimony leaves open the possibility defendant took the car after they retired for the night since the crime occurred within this time frame.

In summary, the evidence is sufficient to convince a rational trier of fact beyond a reasonable doubt that defendant was the perpetrator.

AFFIRMED.