**STATE of Iowa, Appellee,**

v.

**George Calvin NAGEL, Jr., Appellant.**

**No. 88–1458.**

Court of Appeals of Iowa.

April 24, 1990.

As Corrected Sept. 18, 1990.

Raymond E. Rogers, State Appellate Defender, James F. Whalen, and Andi S. Lipman, Asst. State Public Defenders, for appellant.

Thomas J. Miller, Atty. Gen., Amy M. Anderson, Asst. Atty. Gen., Mary Richards, County Atty., and Douglas R. Marek, Asst. County Atty., for appellee.

Heard by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.

DONIELSON, Judge.

The charge against defendant arose from the robbery of the Apothecary Shop, an Ames pharmacy, on November 16, 1987. A man armed with a hand gun entered through the back door of the store and threw a small sack at the store owner and demanded he be given all "opiates, percodans, and dilaudids." The owner, Mr. Rhodes, complied, and the robber left. The owner of the pharmacy then called the police. The robber was identified as wearing a dark blue hooded sweatshirt, with the hood up, and jeans. The owner identified him as being approximately 6'2" tall and weighing between 150 and 170 pounds. A customer, Ms. Ford, who was entering the pharmacy at the time the robber was leaving, testified she saw a man jog past her wearing a dark blue hooded sweatshirt and mirrored sunglasses. She stated he was slender and approximately six feet tall.

The Ames police compiled an array of photos to show to the store owner on November 23rd and to Ms. Ford on November 25th. The Ames police had no suspects, but were aware the Des Moines police were investigating a number of drug store robberies and asked the Des Moines police to send photographs of possible suspects in their cases. Both witnesses selected the defendant's photograph. The owner indicated he was fairly sure the defendant was the robber; Ms. Ford stated defendant's picture looked somewhat like the individual she saw leaving the store, but she was not positive.

On the basis of the photographic identifications and a police interview with defendant, the Ames police applied for and obtained an order, pursuant to Iowa Code chapter 810, for the defendant to appear at a corporeal lineup to be held on February 19, 1988. The owner of the pharmacy was the only witness asked to view the lineup. Six individuals including the defendant were brought before the owner. All subjects were directed to wear dark colored hooded sweatshirts, blue jeans and tennis shoes. All subjects were required to wear wigs which resembled the defendant's hair. The individuals in the lineup ranged in height from 6' to 6'2½" and in weight from 160 to 230 pounds. During the lineup all subjects were required to step forward for voice identification as well. The owner of

the pharmacy selected defendant after viewing the lineup and stated he had no doubt defendant was the robber.

Defendant was convicted of first-degree robbery, and he now appeals. He contends the lineup conducted prior to his arrest was in violation of his right to counsel pursuant to Iowa Code section 810.8(8). He also argues the procedures used to identify him were impermissibly suggestive and conducive to a very substantial likelihood of irreparable misidentification, in violation of his right to due process under the fourteenth amendment of the United States Constitution. We reject each of defendant's arguments and affirm his conviction.

I. *Right to Counsel.* Defendant claims the lineup was conducted in violation of his right to counsel under section 810.8(8) of the Iowa Code. That section provides when ordering a person to submit to non-testimonial identification procedures, a court order must inform the party "[t]hat the right to counsel shall apply during non-testimonial identification procedures, including the right of indigent persons to appointed counsel." Iowa Code § 810.8(8) (1987). A nontestimonial identification order was issued and served on defendant on February 9, 1988, directing him to appear for a lineup on February 19, 1988. The order issued to defendant informed him of his right to apply for court-appointed counsel. Defendant appeared at the lineup without an attorney. The record reveals he mentioned to an officer he did not have time to find a lawyer. He did not, however, ask for a delay in the lineup or for the appointment of counsel before the scheduled lineup commenced.

The parameters of the right to counsel set forth in section 810.8(8) have not been addressed by our appellate courts. The State contends the right to counsel is not self-executing; a defendant must ask for the help of a lawyer to activate the right. Under the circumstances of this case, we agree with the State.

As required by statute, defendant was informed of his right to have court-appointed counsel available for the lineup. Defendant testified he had read the order prior to the lineup and was aware of his right to be represented by counsel. A defendant aware of his right to request court-appointed counsel may not later cry foul because he did not seek such assistance. In the constitutional context, it has been determined a defendant informed of his right to counsel must exercise that right by indicating he wants the assistance of counsel, *Patterson v. Illinois*, 487 U.S. 285, 290–92, 108 S.Ct. 2389, 2394, 101 L.Ed.2d 261, 271 (1988), and we find a similar approach is appropriate in this matter.

Defendant was aware of his right to counsel, yet he appeared at the designated time and place for the lineup without an attorney and requested neither a delay in the lineup or the appointment of counsel. The trial court did not err in finding no violation of defendant's right to counsel, and it correctly overruled defendant's motion to suppress.

II. *Identification Procedures.* Defendant contends the procedures used to identify him were impermissibly suggestive and gave rise to a very substantial likelihood of irreparable misidentification. Defendant challenged the photographic identification procedures used by the police and contended the photographic array shown to Mr. Rhodes and Ms. Ford was suggestive. He also claimed the subsequent corporeal lineup was tainted by the suggestiveness of the photographic array, thus leading to a substantial likelihood of irreparable misidentification.

The analysis of an undue suggestiveness claim is separated into two parts. The first consideration is whether the out-of-court identification procedure was impermissibly suggestive. If so, the totality of the circumstances must be examined to determine whether the procedure gave rise to a very substantial likelihood of irreparable misidentification. *State v. Rawlings*, 402 N.W.2d 406, 407 (Iowa 1987).

Defendant alleges the photographic array was impermissibly suggestive for two reasons: 1) only one of the photographs closely matches the description of the robber given by Mr. Rhodes and Ms.

Ford; and 2) height and weight labels hung around the neck of the individuals pictured in eight of the nine photos in the array.

Mr. Rhodes had described the robber as a white male with long hair between age 25 and 26, 6′2″ in height, and between 150 and 170 pounds in weight. Ms. Ford described a white male in his twenties, 6′2″ in height, slim, and who weighed around 170 pounds. The photographic array contained the photos of nine white males. All of the individuals pictured could be in their twenties. Eight had long hair, and none were particularly clean-shaven. The weight and height tags revealed a height span of 5′6″ to 6′, and a range in weights of 133 to 220 pounds. Defendant's tag revealed he was the tallest pictured at six feet; his weight read 166 pounds. One of the pictures showed only a frontal view, while the other eight showed a front and two side views of each individual. All of the pictures were of a mug shot variety.

Although there are differences between defendant and the others pictured, we cannot find the photographic array was impermissibly suggestive. When the photographs were presented to Mr. Rhodes, the officer stated, "There is a good possibility the fellow that came in to rob you is not in here, or there is a possibility he may be in here." The officer indicated he gave the same directions to Ms. Ford as he did to Mr. Rhodes.

A similar challenge to a photographic array was rejected in *State v. Neal*, 353 N.W.2d 83 (Iowa 1984). In *Neal*, the defendant contended only his photograph fit the description given and height scales pictured in the photos indicated only he fell within the height range given by the crime victim. *Id.* at 88.

The court rejected Neal's claim regarding the disparity in the physical characteristics of the men depicted and stated, "due process does not require the police to scour their files to come up with a photographic display that would eliminate all subtle differences between individuals." *Id.*

The *Neal* court found the height charts did not render the array suggestive because they were not a single and riveting characteristic of the display. *Id.* *See also Rawlings,* 402 N.W.2d at 409 (court rejected defendant's argument that photo array of mug shots which contained identifying information such as height and weight was impermissibly suggestive). Mr. Rhodes testified he noticed the height and weight information, but it was not a major factor in identifying defendant. Mr. Rhodes claimed it was defendant's distinct face and eyes which enabled him to recognize him immediately. We cannot find the photographic display was impermissibly suggestive.

■ Even if the photographic identification procedure was presumed "suggestive," it would not necessarily follow that there was a very substantial likelihood of irreparable misidentification. The factors to be considered in determining the effect of suggestiveness include: the opportunity of the witness to view the criminal at the time of the crime; the witness's degree of attention; the accuracy of the witness's prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. *Rawlings,* 402 N.W.2d at 408; *State v. Mark,* 286 N.W.2d 396, 405 (Iowa 1979).

■ In determining whether there is a very substantial likelihood of "irreparable misidentification," we focus on whether the identification was reliable under the totality of the circumstances. *Mark,* 286 N.W.2d at 405. We have carefully reviewed the record and cannot find a substantial likelihood of irreparable misidentification. Each witness had an opportunity to view defendant. Mr. Rhodes was in his presence for a few minutes, and while Ms. Ford only briefly observed defendant as he jogged past her, he specifically drew her attention because he looked like someone she had seen in a movie. The general description provided by the witnesses accurately described defendant, and their photo array identifications were made within approximately a week of the crime, lending credibility and reliability to their identifications.

**14**

The trial court did not err in declining to exclude evidence of pretrial and in-court identifications of defendant. Defendant's conviction is affirmed.

AFFIRMED.