**IN THE COURT OF APPEALS OF IOWA**

No. 13-0456
Filed June 11, 2014

**STATE OF IOWA,**
  Plaintiff-Appellee,

**vs.**

**CARDNEL BROWN JR.,**
  Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Glenn E. Pille, Judge.

Cardnel Brown Jr. appeals his judgment and sentence for two counts of second-degree robbery. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Dennis D. Henrickson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, John P. Sarcone, County Attorney, and Olubunmi Salami, Assistant County Attorney, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**VAITHESWARAN, P.J.**

Cardnel Brown Jr. appeals his judgment and sentence for two counts of second-degree robbery. He contends the evidence was insufficient to support the jury's finding of guilt. He specifically asserts "[t]he evidence of each robbery consisted solely of eyewitness identification" and suggests more was required.

We will affirm a jury's finding of guilt if it is supported by substantial evidence. *State v. Hennings*, 791 N.W.2d 828, 832 (Iowa 2010). Because Brown's focus is on the eyewitness identifications, we will begin and end our analysis with that evidence.

The jury was instructed that "[t]he reliability of eyewitness identification has been raised as an issue." The jury was further instructed as follows:

> Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to see the person at the time of the crime and to make a reliable identification later.
>    In evaluating the identification testimony of a witness, you should consider the following:
>    1. If the witness had an adequate opportunity to see the person at the time of the crime. You may consider such matters as the length of time the witness had to observe the person, the conditions at that time in terms of visibility and distance, and whether the witness had known or seen the person in the past.
>    2. If an identification was made after the crime, you shall consider whether it was the result of the witness's own recollection. You may consider the way in which the Defendant was presented to the witness for identification, and the length of time that passed between the crime and the witness's next opportunity to see the Defendant.
>    3. An identification made by picking the Defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the Defendant alone to the witness.
>    4. Any occasion in which the witness failed to identify the Defendant or made an inconsistent identification.

A reasonable juror could have found that several eye witnesses implicated Brown in two robberies.

The first robbery took place at a restaurant. A woman working at the restaurant testified she was grabbed by a man who told her he was robbing her. She was close enough to look at his face. Several months after the incident, a detective asked her to examine a six-person photographic array. The woman identified Brown as the person who robbed her. In time, Brown's attorney showed her a twelve-person photo array. Again, the woman identified Brown as the person who robbed her. At trial, she confirmed Brown was the person in both pictures.

The second robbery took place at a store. A woman working at the store testified she was robbed. Police later showed her a six-person photo array and told her to pick out the person who looked like the robber. The woman identified Brown. She had no doubt he was the person who robbed her. A few months after this identification, Brown's attorney showed her a twelve-person photo array. The woman again identified Brown as the person who robbed her.

Brown points out that the woman at the store was unable to identify Brown at trial. While the jury could have considered her equivocation in assessing the reliability of her prior identifications, a reasonable juror also could have considered the fact that her photo-array identifications were corroborated by another woman who worked at the store. *See State v. Mark*, 286 N.W.2d 396, 405 (Iowa 1979) ("Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.").

This second woman at the store testified that, although she did not see the robbery, she spent some time showing a person items in the store. She identified the same individual in the photo arrays as the robbed woman identified. At trial, she was asked if she had any doubt that she picked the right person. She responded, "No, sir."

A reasonable juror could have found from this testimony that the eyewitness identifications were reliable. All the witnesses saw the robber from a close vantage point. *State v. Nagel*, 458 N.W.2d 10, 13-14 (Iowa Ct. App. 1990) ("Each witness had an opportunity to view defendant."). All the witnesses were able to identify the robber in two separate photo arrays, including one prepared by the defense. *See State v. Rawlings*, 402 N.W.2d 406, 408 (Iowa 1987) ("In this case, the three victims, and another witness, saw their assailants at close range, and they all testified at trial that Rawlings was one of them."); *State v. Neal*, 353 N.W.2d 83, 87 (Iowa 1984) ("The use of a photographic array rather than a corporeal lineup in the investigative stage is usually constitutionally permissible."). The photo arrays contained a group of similar individuals. *Rawlings*, 402 N.W.2d at 408 ("Although there are differences between Rawlings and the other photographs in the first lineup, it appears that there was at least a reasonable effort to harmonize the photographs."). The twelve-person array, in particular, included several pictures of individuals with similar hairstyles and similar body builds. *See id.* An eyewitness identification expert called by the defense opined that this photo array was appropriate. While he spoke of the difficulties in cross-cultural identification, he failed to establish that the identifications were in fact cross-cultural.

Brown nonetheless insists that eyewitness identifications alone cannot support a finding of guilt. The United States Supreme Court addressed a similar challenge to eyewitness identifications in *Perry v. New Hampshire*, 132 S. Ct. 716, 728 (2012). The Court reaffirmed prior conclusions "that the potential unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair." *Perry*, 132 S. Ct. at 728. The Court declined to require district courts to preliminarily pass on the reliability of pretrial identifications, as the defendant advocated, explaining that other safeguards in the adversarial system kept the jury from assigning undue weight to unreliable witness identifications. *See id.* The Court pointed to a defendant's Sixth Amendment right to confront witnesses and to effective assistance of counsel "who can expose the flaws in the eyewitness' testimony during cross-examination and focus the jury's attention on the fallibility of such testimony during opening and closing arguments." *Id.* The Court also cited "specific jury instructions . . . [which] warn the jury to take care in appraising identification evidence." *Id.* at 728-29. The Court finally pointed to the heavy burden of proof and evidentiary rules that permitted exclusion of evidence. *Id.* at 729.

Brown was afforded most if not all these safeguards. The eyewitnesses testified at trial and were pointedly cross-examined by Brown's attorney. In his closing argument, Brown's attorney honed in on the fallibility of these identifications. He emphasized that police told the witnesses they had a suspect, creating an expectation they would see the individual in the photo array, a practice Brown's expert criticized. He cited other inconsistencies and explained to the jury, "I'm pointing out cracks, holes in this boat that the State's offering you

a ride in." He concluded by referring to the State's obligation to prove guilt beyond a reasonable doubt.

Before the jurors retired to deliberate, they received the quoted instruction on the factors for consideration in determining the reliability of eyewitness identifications. That instruction placed them on notice to closely scrutinize the identifications.

Because Brown was afforded certain safeguards articulated in *Perry*, he faces an uphill battle in arguing that the predominance of eyewitness identification evidence in this trial requires reversal.[1]

We conclude the jury's findings of guilt are supported by substantial evidence. Accordingly, we affirm Brown's judgment and sentence.

**AFFIRMED.**

---

[1] Brown argues that the record contains nothing more than eyewitness identifications. While this was certainly the major form of evidence, other evidence was also admitted.