# IN THE COURT OF APPEALS OF IOWA

No. 17-0114
Filed November 8, 2017

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**THOMAS A. WOODARD,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, John D. Ackerman, Judge.

Thomas Woodard appeals his convictions for first-degree robbery and first-degree burglary. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

Two men—one wielding a knife—forced themselves into a home, assaulted the woman who lived there, and stole $80 and a cell phone. A jury found Thomas A. Woodard guilty of first-degree robbery and first-degree burglary after his accomplice and the woman testified against him. On appeal, Woodard challenges the sufficiency of the evidence supporting the findings of guilt. He specifically argues his accomplice's identification of him as the second intruder was insufficiently corroborated by the woman.

Iowa Rule of Criminal Procedure 2.21(3) governs corroboration of accomplice testimony. It states:

> A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Iowa R. Crim. P. 2.21(3).

We begin with the accomplice testimony.[1] The second man who participated in the crimes testified to being friends with Woodard. He stated Woodard hatched a plan to drive from Liberal, Kansas to Sioux City, Iowa and rob a drug house. Woodard drove to the house, parked "[a]round the corner," "[w]alked up," and "knocked on the door." Woodard was wearing "[d]ark clothes," while the accomplice was wearing a red hooded sweatshirt and "had a Band-Aid on [his] nose." The accomplice testified both were wearing conspicuous black

---

[1] Woodard does not question the second man's status as an accomplice. *See State v. Barnes*, 791 N.W.2d 817, 823 (Iowa 2010) ("In general, a person is an accomplice if he or she could be charged and convicted of the same offense for which the defendant is on trial.").

and white gloves. He did not recall whether the sleeves to Woodard's sweatshirt were up or down. When a woman opened the door, both men walked in without permission. The accomplice showed the woman a knife, which he held in his left hand. Woodard told him to put the knife away. Meanwhile, Woodard told the woman to take him to a bank. According to the accomplice, the woman responded, "Can't go the bank because nobody is supposed to be there at this time, alarms will go off and police will show up." The woman mentioned she had money in her purse. She gave Woodard $80. The accomplice searched for a safe, returned from the bedroom, and forced the woman to the ground. The two men "ended up taping [the woman] up" and tying her to a chair. The accomplice pled guilty to second-degree robbery and first-degree burglary. Although his plea agreement did not require him to testify at Woodard's trial, he stated he "was told that if [he] didn't testify there would be federal charges put against [him]."

The woman corroborated large parts of the accomplice's testimony. *See State v. Peterson*, 663 N.W.2d 417, 434 (Iowa 2003) ("Corroboration is required not only to provide a firm connection between the accused and the crime but also to enhance the credibility of an accomplice whose involvement in the crime and self-interest in blaming the defendant severely erode his believability." (quoting *State v. Ware*, 338 N.W.2d 707, 710 (Iowa 1983))). She testified two men came to her door. One "had a red and white hoodie" and "a Band-Aid on his face," and "[t]he other had a black hoodie." According to the woman, the men "immediately started pushing [her] backward at [her] door." The man in the red hoodie "presented the knife," which he "was holding . . . in his left hand." "The one in the black hoodie told the one in the red hoodie to put [the knife] down." The men

"want[ed] cash." She told them there was an alarm at the credit union where she worked. The accomplice asked her where her safe was. She responded she did not have one. She heard him go back to her bedroom. She offered Woodard cash in hopes the men would leave. He took approximately $80.

The woman twice identified Woodard as the man in the black hoodie—once in a photo line-up and a second time at trial. We conclude the woman's testimony "tended to connect [Woodard] with the commission of the offense." Iowa R. Crim. P. 2.21(3).

In reaching this conclusion, we have considered a discrepancy between the accomplice's testimony that the men wore gloves and the woman's testimony that neither wore gloves. This discrepancy does not alter our conclusion because corroborating testimony need not "confirm every material fact testified to by an accomplice." *State v. Hutchison*, 341 N.W.2d 33, 37 (Iowa 1983).

We have also considered the testimony of two defense witnesses who stated Woodard had facial hair and a tattoo on his forearm. Neither witness unequivocally stated they saw Woodard on the day of the crime. As for the tattoo on Woodard's forearm, the accomplice could not recall whether Woodard's arm was covered with his sweatshirt during the intrusion.

Inconsistencies in the woman's pretrial and trial statements also do not lead us to a different conclusion. The jury was instructed it could "disregard all or any part of her testimony" if it found "the statements were made and were inconsistent with the testimony given at trial, but" it was "not required to do so." The jury reasonably could have disregarded the woman's stated belief that the men were younger than they turned out to be without questioning her description

of the intrusion. *See id.* ("The corroboration of an accomplice's testimony need not be strong . . . ."). Similarly, the jury could have overlooked the woman's initial statement that the man with the black hoodie rather than the red hoodie wore a Band-Aid, in light of her subsequent identification of Woodard.

We recognize the photo identification was not iron-clad. Specifically, the identification was made two years after the crimes and the woman recalled that the man was clean-shaven, even though the man she identified had facial hair.[2] But the woman took her time, examined the eyes of the individuals, tentatively identified Woodard, followed up by stating, "I want to really look at him good," and only after reevaluating the photographs, circled the picture of Woodard. We conclude her pre-trial identification corroborated the accomplice testimony. *See State v. Neal*, 353 N.W.2d 83, 88 (Iowa 1984) (noting the witness' "refusal to positively identify her assailant until she was absolutely sure shows she was not amenable to pressure"). However, even without this identification, the woman's testimony about how the crimes unfolded together with her in-court identification of Woodard sufficiently corroborated the accomplice's testimony.

We affirm Woodard's convictions for first-degree robbery and first-degree burglary.

**AFFIRMED.**

---

[2] The officer also admitted he did not use a double-blind protocol. Woodard does not challenge this aspect of the photo identification.