STATE of Iowa, Appellee,

v.

Donald Eugene NEWMAN, Appellant.

No. 65992.

Supreme Court of Iowa.

Nov. 24, 1982.

Wayne H. McKinney, Jr., Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., Dan Johnston, Polk County Atty., Jan V. Berry and James Smith, Asst. Polk County Attys., for appellee.

Considered by LeGRAND, P.J., and UHLENHOPP, McCORMICK, LARSON and SCHULTZ, JJ.

LeGRAND, Presiding Justice.

In this consolidated appeal, defendant challenges his conviction and subsequent sentence for first degree kidnapping (Iowa Code § 710.2) and second degree sexual abuse (Iowa Code § 709.3). Defendant also challenges the trial court's denial of post conviction relief under Iowa Code ch. 663A. We affirm except as to the charge of sexual abuse, as to which we reverse.

We are today filing our opinion in a second case involving this defendant and involving, too, many of the same issues as are present here. *See State v. Newman,* 326 N.W.2d 796 (Iowa 1982).

From the evidence presented, the jury could have found that the victim, a sixteen-year-old girl, had been walking alone in downtown Des Moines early during the evening of March 27, 1980. A man, later identified as defendant, stopped his car and asked her if she wanted a ride. At first, the victim declined but then got in the car after defendant showed her a badge and identified himself as a police officer. Instead of driving towards the victim's destination, the defendant drove the victim, against her wishes, to a city park. There he threatened her, prevented her from leaving the car, and forced her to perform several sex acts.

The victim immediately reported the attack to the police. An investigation resulted in defendant's arrest just a few days later. Defendant raises five issues on his direct appeal and one additional issue on this appeal from denial of postconviction relief. We consider each separately.

I. *Sufficiency of the Evidence.*

Defendant claims there was insufficient evidence for the jury to find, beyond a reasonable doubt, that the victim had been kidnapped. Specifically, he claims the confinement and asportation of the victim were "merely incidental" to the various sexual assaults and did not constitute the crime of kidnapping. We disagree.

■ In reviewing questions relating to the sufficiency of evidence, we examine the

whole record in the light most favorable to the State, accept all legitimate inferences permitted by the evidence, and uphold the jury's finding when there is substantial evidence to support it. *State v. Knupp,* 310 N.W.2d 179, 182 (Iowa 1981).

Iowa Code section 710.1 provides, in pertinent part:

A person commits kidnapping when he or she either confines a person or removes a person from one place to another, knowing that he or she has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:

. . . .

3. The intent to inflict serious injury upon such person, or to subject the person to sexual abuse.

Kidnapping in the first degree is defined in Iowa Code section 710.2 and includes kidnapping which subjects the victim to intentional sexual abuse. The issue raised by defendant is that there was no substantial evidence of the victim's confinement or removal sufficient to satisfy those terms as they are used in the statute.

■ In *State v. Rich,* 305 N.W.2d 739 (Iowa 1981), we first examined the words "confines" and "removes" as used in section 710.1. We held the legislature did not intend that statute to apply to sexual abuse attacks where the confinement or asportation of the victim had no significance independent of the actual assault. *Id.* at 745. In ruling that a slight or incidental act of asportation would not sustain a conviction, we followed a recent trend which rejects the view that *any* movement of the victim is enough to constitute kidnapping. *Id.* at 744; *see also* Note, *Kidnapping in Iowa: Movement Incidental to Sexual Abuse,* 67 Iowa L.Rev. 773, 780 (1982).

■ In *Rich* we also held there is sufficient confinement or removal to constitute kidnapping under Iowa Code section 710.1 when the acts relied on either:

1. substantially increase the risk of harm to the victim; or

2. significantly lessen the risk of detection; or

3. significantly facilitate escape following the consummation of the offense.

305 N.W.2d at 745.

Since *Rich,* we have applied this test in several other factual situations which were summarized in *State v. Mead,* 318 N.W.2d 440 (Iowa 1982). In *Mead,* we reversed defendant's kidnapping charge after finding insufficient evidence of confinement. In *State v. Marr,* 316 N.W.2d 176, 180 (Iowa 1982), we reversed a kidnapping conviction after finding insufficient evidence of removal.

■ In the present case, however, unlike *Mead* and *Marr,* there was substantial evidence upon which a jury could find beyond a reasonable doubt that the victim's removal and confinement were more than incidental to the episodes of sexual abuse. Defendant lured the victim into his car after claiming he was a police officer and flashing a false badge of identity. He then transported her to various places around town. Using physical force, he thwarted at least two escape efforts before threatening to shoot the victim if she made any further attempts to get out of the moving car. The risk of serious injury to the victim further increased when the defendant, while he was driving the car, forced the victim to perform various sexual acts. Then, after threatening the victim, defendant drove to a secluded place, dragged her into a wooded area, again sexually assaulting her. These facts far exceed slight or incidental acts of confinement and asportation. We hold that the trial court did not err in overruling defendant's motion for directed verdict on this ground. *Cf. State v. Folck,* 325 N.W.2d 368, (conviction upheld when victim was driven short distance to remote place); *Knupp,* 310 N.W.2d at 183 (conviction upheld when victim was moved seven blocks to a more isolated area).

II. *Constitutionality of Iowa's Kidnapping Statute.*

Defendant claims that Iowa's definition of kidnapping, section 710.1, is unconstitu-

tional on its face because the statute is vague and overbroad, failing to give fair notice of the conduct proscribed. Specifically, defendant asserts the legislature's failure to define the terms "removes" and "confines" is fatal. We reject defendant's argument.

We considered a somewhat similar claim in *State v. Whetstine*, 315 N.W.2d 758 (Iowa 1982), (quoting *State v. Sullivan*, 298 N.W.2d 267, 270–71 (Iowa 1980)), where we said:

> The principles we apply in this type of case are well established .... The person mounting the constitutional challenge on a legislative enactment carries the heavy burden to rebut a strong presumption of constitutionality. If a statute can be made constitutionally definite by a reasonable construction, this court is under the duty to give the statute that construction.
>
> The specificity [that] due process requires of a penal statute need not be apparent from the face of the statute but may be ascertained by references to prior judicial decisions, similar statutes, the dictionary, or common generally accepted usage.

315 N.W.2d at 764.

■ When these principles are applied to the instant facts, defendant's constitutional challenge fails because he has not carried his heavy burden of rebutting the presumed constitutionality of section 710.1. Even if we accept defendant's argument—which we do not do—that the statute does not give a person of ordinary intelligence fair notice of what is prohibited, defendant's argument ignores the guidelines established by *Rich* and cases following the *Rich* rationale. They provide the specificity necessary to meet constitutional standards. Defendant's argument is without merit.

### III. *Prejudicial Testimony.*

One of the State's witnesses, Detective Jones, testified that he was the officer who arrested the defendant. In testifying to the details of the arrest, Jones stated that he and his partner visited the defendant's home to determine whether defendant's blue Monza had been used in the abduction. After being invited into defendant's living room, Jones observed that defendant fit the general description given by the victim, including details that her assailant wore a gold ring and brown pointed-toe cowboy boots. The detective observed both of these items while talking to defendant. While this conversation was going on, Randy Wilson appeared and asked to speak with Detective Jones privately. Immediately after talking with Randy Wilson, the detective placed the defendant under arrest.

At this point defense counsel objected to testimony concerning what Randy Wilson told the officer. The trial court sustained defendant's objection and told the jury to disregard any testimony by Detective Jones as to anything that was said to him by Randy Wilson. Notwithstanding this admonition to the jury, defendant claims the trial court erred in failing to grant defendant's motion for mistrial because of testimony concerning Randy Wilson.

■ Assuming arguendo that defendant's objection was well taken, the trial court's action in striking the testimony and instructing the jury to disregard it cured any error. *State v. Williams*, 315 N.W.2d 45, 55–56 (Iowa 1982). We hold defendant has failed to show he was prejudiced, and consequently the trial court did not abuse its discretion in denying a new trial on this ground.

### IV. *Sexual Abuse as a Lesser Included Offense.*

Defendant argues he cannot be punished for both first degree kidnapping and second degree sexual abuse because second degree sexual abuse is a lesser included offense of first degree kidnapping as charged in this case. Therefore, he says, pursuant to Iowa Code section 701.9, the lesser offense merges into the greater. Although tacitly agreeing that sexual abuse is a lesser included offense of kidnapping as here charged and tried, the State argues that the defendant committed at least two separate and dis-

tinct crimes of sexual abuse, only one of which was the basis for the kidnapping charge. The other act, the State says, supports the conviction for sexual abuse. Under the circumstances of this case, we reject the State's argument.

■ We do not foreclose the State's right to convict a defendant of both kidnapping in the first degree and sexual abuse if the case is presented to the jury in that way and the jury makes findings accordingly. A defendant should not be allowed to repeatedly assault his victim and fall back on the argument his conduct constitutes but one crime. Other jurisdictions have met this problem in considering whether there can be separate charges based on multiple sexual assaults. A number of courts have held a defendant may be convicted separately for each attack. *E.g. People v. Saars,* 196 Colo. 294, 303, 584 P.2d 622, 629 (1978) (separate and distinct acts of sexual abuse on same victim may be prosecuted and punished separately even though all occurred within period of two hours); *Vaughan v. State,* 614 S.W.2d 718, 722 (Mo.Ct. App.1981) (two rapes committed on same victim at same place within fifty-five minutes may constitute separate crimes if each was intended by defendant as separate gratification of his sexual desires); *State v. Bussiere,* 118 N.H. 659, 661, 392 A.2d 151, 153 (1978) (defendant may be separately tried and convicted for acts of sexual abuse committed by different means and ·in different ways); *State v. Ware,* 53 Ohio App.2d 210, 211, 372 N.E.2d 1367, 1368 (1977) (convictions for invasions of different bodily orifices upheld as separate and distinct offenses although arising out of same incident); *State v. Eisch,* 96 Wis.2d 25, 27, 291 N.W.2d 800, 801 (1980) (four sex acts, each of different kind and character, constitute four separate crimes, even when occurring at same location within two-and-one-half-hours); *Hamill v. State,* 602 P.2d 1212, 1216 (Wyo.1979) (sexual acts, even if closely related in time and place, may constitute separate offenses where occurring in different ways). *But see State v. Dorsey,* 224 Kan. 152, 156, 578 P.2d 261, 265 (1978).

■ In the instant case, the matter was tried and submitted to the jury as one continuing event. The State did not prove some sexual acts as a predicate for the kidnapping charge and other such acts as the basis for a separate and distinct crime of sexual abuse nor was the case submitted to the jury that way. Instead the prosecution from start to finish was treated by all concerned as a single episode. The State cannot depart from that course now. *See State v. Newman,* 326 N.W.2d 796 (Iowa 1982); *State v. Folck,* 325 N.W.2d 368 (Iowa 1982). We reiterate what we said in those opinions, and for the same reasons, hold the present conviction for sexual abuse cannot stand.

## V. *The Lineup.*

A few days after the assault, the victim was brought to the police station where she identified the defendant from a lineup of five men. On appeal, defendant claims that this lineup was overly suggestive, highly prejudicial, and constituted a denial of his right to counsel because his attorney was not present.

■ This issue was first raised in defendant's motion for a new trial. His complaint came too late, and we therefore consider it waived. *State v. Droste,* 232 N.W.2d 483, 487–88 (Iowa 1975). It is however, an important ground relied on by defendant in his postconviction petition. We therefore consider it later in our review of defendant's appeal from the denial of postconviction relief.

## VI. *Ineffective Counsel.*

■ Defendant filed a petition under Iowa Code chapter 663A asking postconviction relief on the ground of ineffective trial counsel. He detailed seven areas in which he asserts his lawyer rendered services below the range of normal competency. Because this raises constitutional issues under the sixth amendment to the United States Constitution concerning right to counsel, we review the evidence de novo and make our own evaluation of the circumstances.

*Fryer v. State,* 325 N.W.2d 400 (Iowa 1982); *Sallis v. Rhoads,* 325 N.W.2d 121, 122 (Iowa 1982).

 The person asserting the claim of ineffective counsel must establish it by a preponderance of the evidence. The test is whether counsel's performance was within the range of normal competency. *Sallis,* 325 N.W.2d at 123; *Snethen v. State,* 308 N.W.2d 11, 14 (Iowa 1981).

Defendant's principal complaint concerns his assertion the lineup procedure at which the victim identified him violated his constitutional rights and deprived him of a fair trial.

 This was a lineup conducted prior to any charge having been filed against defendant. Defendant was not constitutionally entitled to the presence of his attorney. *State v. Watts,* 244 N.W.2d 586, 589 (Iowa 1976) (following *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)).

The lineup was held within a few days of the crime. Five persons, including defendant, were produced for the victim to view. Defendant says the procedure was "impermissibly suggestive" and that his trial counsel was incompetent because he failed to object to the introduction of this evidence.

Defendant asserts a number of specific objections to support his claim. He says he was the shortest of the five men used in the lineup, which he deems significant because the victim had described her assailant as being short; he wore green slippers and the others all wore shoes; and his coverall was the only ill-fitting one and the only one, too, from which blue trousers similar to police uniforms did not show. He points also to difference in hair style and dress between him and the others.

 In considering this matter, we use a two-part analysis as explained in *State v. Mark,* 286 N.W.2d 396, 403 (Iowa 1979). First, we decide if the procedure used by the police was in fact "impermissibly suggestive." If we find it was, we determine if, under the totality of the circumstances, there was "a very substantial likelihood of

irreparable misidentification." *Id.* at 404. If not, the evidence is for the jury to weigh. *Id.; State v. Hicks,* 277 N.W.2d 889, 893 (Iowa 1979).

 We do not believe the circumstances about which defendant complains made the lineup impermissibly suggestive. Some of the differences were without significance. The others were proper factors for the jury to weigh, but they did not render the identification fatally defective. Even assuming, however, that the lineup was impermissibly suggestive as claimed, the identification evidence nevertheless was admissible because under this record we find no "substantial likelihood of irreparable misidentification." *State v. Holderness,* 301 N.W.2d 733, 738 (Iowa 1981); *Mark,* 286 N.W.2d at 405.

 We reach this conclusion by applying the five-factor test explained in *Mark,* 286 N.W.2d at 405–07. We now discuss each of them briefly:

a) *Opportunity to View.* The victim had ample opportunity to view defendant during her period of torment. She was uncertain about how long this was. Her estimates ran from five minutes all the way to one-hour-and-forty-five minutes. In any event it was long enough for her to observe defendant and to later identify him.

b) *Degree of Attention.* Obviously the victim was not a disinterested spectator. She was vitally concerned in the events taking place. The circumstances made it unlikely she would forget defendant's features or appearance.

c) *Accuracy of Description.* The victim's description of her assailant, including his clothes and his jewelry, was generally accurate except as to the color of his hair. This matter was fully exploited on cross examination and would, if anything, affect only the weight of the identification testimony.

d) *Level of Certainty.* The victim was positive and certain in her identification from the very start. This continued throughout the case. She never

wavered from an unequivocal designation of defendant as the man who raped her.

e) *Time-Span.* The lineup was held within a few days of the crime, lending credibility and reliability to the identification.

We believe the application of these five factors to the present case establishes the reliability of the identification. This is buttressed by the victim's in-court testimony, when she was again positive and unequivocal in pointing out the defendant as her assailant. On cross examination, she stoutly denied she was influenced by the "suggestive circumstances" defendant finds objectionable. She insisted she selected defendant because he was "the guy who raped [her]." This conclusion remained unshaken after prolonged and vigorous cross examination.

■ At the postconviction hearing, Mr. Rigg, defendant's trial counsel, explained his failure to ask that the identification testimony be suppressed by saying he thought there was no basis for suppression and that a motion to suppress would have been "frivolous." The designation of the motion as "frivolous" is perhaps too strong; but our conclusion that the evidence was admissible bears out counsel's opinion that there was no basis to suppress the testimony. Under these circumstances, counsel's action can hardly be branded as below the range of normal competency.

Defendant's other complaints about Mr. Rigg's representation were:

1. He failed to move to exclude certain testimony at trial;
2. He failed to move for sequestering of the jury;
3. He failed to voir dire prospective jurors about pretrial publicity;
4. He failed to poll the jury as to their reasons for reaching the guilty verdict;
5. He failed to call officer Don Cole as a defense witness; and
6. He was inadequately prepared for trial.

■ Some of these are clearly without substance. Nevertheless we have examined each complaint made and the evidence regarding it. For each decision Mr. Rigg had a reason and an explanation. In retrospect some of them are subject to challenge. When counsel makes a reasonable decision concerning strategy, however, we will not interfere simply because it did not achieve the desired result. *Fryer,* 325 N.W.2d at 413; *Sims v. State,* 295 N.W.2d 420, 423–24 (Iowa 1980).

■ Mr. Rigg is an experienced trial lawyer, much of whose work is in criminal cases. He made decisions involving tactics and strategy, some of which backfired. This happens in almost every case. It does not indicate incompetence. Clients are disposed to equate competence with success; but a lawyer can only do what the facts and circumstances permit.

■ After a certain course has proven unsuccessful, it is easy to say some other one should have been tried instead. This is unfair to counsel, who must make a choice between existing alternatives *before* the fact. We have refused to assume the role of Monday morning quarterback in condemning counsel's judgment in choosing between what are frequently equally hazardous options available to him. In reviewing the totality of the circumstances and considering counsel's overall representation, rather than isolated complaints about what counsel *might* have done, we find Mr. Rigg's performance was within the range of normal competence, which is the test to be applied. *Fryer,* 325 N.W.2d at 412–13; *Hinkle v. State,* 290 N.W.2d 28, 30–31 (Iowa 1980).

VII. *Conclusion.*

For the reasons stated in Division IV, we reverse the judgment on the charge of sexual abuse. In all other respects we affirm the trial court on the principal appeal and on the appeal from the postconviction judgment.

AFFIRMED IN PART AND REVERSED IN PART.