**STATE of Iowa, Appellee,**

v.

**David Lee WALTON, Appellant.**

No. 87–312.

Supreme Court of Iowa.

June 15, 1988.

to the equalization order.

Charles L. Harrington, Appellate Defender, and Michael J. Laughlin, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., and Roxann M. Ryan, Asst. Atty. Gen., for appellee.

Considered by HARRIS, P.J., and SCHULTZ, NEUMAN, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

On October 15, 1986, David Lee Walton was charged by trial information with robbery in the first degree. *See* Iowa Code §§ 711.1, 711.2 (1985). Subsequently, Walton filed several motions to suppress evidence, including testimony relating to a pretrial identification of his voice. The motions were denied. A jury found Walton guilty as charged. He was sentenced to an indeterminate term of incarceration not to exceed twenty-five years, including a five-year minimum sentence due to the use of a firearm while committing the offense. Walton brings this appeal in order to challenge the district court's allowance of the identification testimony and the sufficiency of the evidence.

I. *Pretrial Voice Identification.*

Citing authority which discusses the due process ramifications of pretrial identification procedures, Walton contends the district court erred in admitting testimony relating to a pretrial identification of his voice. The issue arises from the following circumstances. On October 1, 1986, Robert Porazil and Bruce Lagerquist spent the evening frequenting several taverns in Cedar Rapids, Iowa, arriving at a bar named Ernie's sometime between 1:00 and 2:00 a.m., October 2. While there, they met a man later identified as Walton who referred to himself as "Jimmy," and who requested a ride home at the end of the evening. Porazil and Lagerquist granted the request and the trio proceeded. After being driven to a house he identified as his, "Jimmy" asked Porazil and Lagerquist to wait while he went to get money from his home to pay them for gas. "Jimmy" returned to the car with a gun, shot Porazil, who then ran off, and demanded money from Lagerquist.

At 2:39 a.m., Jacqueline Ann Henderson, a radio dispatcher for the Cedar Rapids Police Department, received a phone call on the emergency 911 line. The caller, a male,

asked Henderson whether a shooting had been reported that morning. Henderson replied: "Yes, there was." The caller then asked whether there were any suspects. Henderson said there were not and asked for the caller's name. He did not give it and hung up. The call lasted between ten and fifteen seconds. When the 911 call came into the police department, a screen similar to a television screen showed from where the call originated. Henderson saw the address on the screen and brought it to the attention of the police captain on duty at the station. The captain then dispatched Sergeant Robert Rowell to 420 B Avenue, N.E., apartment number five to investigate the call. On arriving at that address, Sergeant Rowell knocked on the apartment door which was opened by a male who initially identified himself as "Jimmy." Later, after conversing with Sergeant Rowell and two other policemen who had arrived, "Jimmy" said his name was David Walton.

At 3:12 a.m., from Walton's apartment, Sergeant Rowell placed a 911 call to radio dispatcher Henderson. Sergeant Rowell then put Walton on the line for a brief conversation with Henderson. Following the conversation, Henderson indicated that Walton's voice was the one she had heard during the earlier call. She testified to that effect at trial.

We have discussed on a number of occasions the principles applicable to a determination of the constitutional propriety of various pretrial procedures resulting in the visual identification of an accused. *See, e.g., State v. Neal*, 353 N.W.2d 83, 86–89 (Iowa 1984); *State v. Newman*, 326 N.W.2d 788, 793–95 (Iowa 1982); *State v. Mark*, 286 N.W.2d 396, 403–07 (Iowa 1979). The inquiry requires a case-by-case resolution of the difference between identification evidence the trustworthiness of which should be committed to the jury and identification evidence so inherently unreliable that due process bars its submission. *See, e.g., Manson v. Braithwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140, 155 (1977); *State v. Bruns*, 304 N.W.2d 217, 219 (Iowa 1981). Although our prior cases have applied this balance to only vis-

ual identification procedures, we believe, and today hold, that the policies underlying the inquiry mandate its application to voice identifications also.

To succeed on a due process claim like that presented here, a defendant must first demonstrate that the challenged procedure was impermissibly or unnecessarily suggestive. *E.g., Newman*, 326 N.W.2d at 794 ("impermissibly suggestive"); *State v. Hicks*, 277 N.W.2d 889, 892 (Iowa 1979) ("unnecessarily suggestive"). If so, it must then be demonstrated that the procedure allowed for a very substantial likelihood of irreparable misidentification of the accused. *E.g., Newman*, 326 N.W.2d at 794; *State v. Haskins*, 316 N.W.2d 679, 681 (Iowa 1982). Our review on these issues is de novo. *Neal*, 353 N.W.2d at 87.

It must be conceded that even the most well-designed and well-applied pretrial identification procedure will be, to some extent, suggestive. *See State v. Sanders*, 312 N.W.2d 534, 540 (Iowa 1981). This will be particularly true in situations of one-on-one confrontations such as that involved here, which, if dealt with in the context of visual identifications, would be referred to as "showups." *See, e.g., State v. Whetstine*, 315 N.W.2d 758, 764 (Iowa 1982); *State v. Washington*, 257 N.W.2d 890, 893–94 (Iowa 1977), *cert. denied*, 435 U.S. 1008, 98 S.Ct. 1881, 56 L.Ed.2d 390 (1978); *State v. Salazar*, 213 N.W.2d 490, 493–94 (Iowa 1973). Notwithstanding these concerns, we have noted that substantial countervailing policy considerations compel the holding that on-the-scene identification procedures, held shortly after the crime, are not violative of due process unless the confrontation is unnecessarily suggestive. *Salazar*, 213 N.W.2d at 493–94; *see State v. Jackson*, 387 N.W.2d 623, 632 (Iowa App.1986). Similar logic controls our decision today.

■ We note initially that the present situation is one step removed from those with which we have been confronted in our past analogous cases. In those earlier cases, we were presented with procedures which led to the identification of an accused as a criminal perpetrator. *See, e.g., Newman*, 326 N.W.2d at 793–95. Here, by contrast, Henderson's testimony did not identify Walton as a criminal perpetrator; rather, it connected him only with the 911 call. Concededly, this connection provided the police with a lead which later proved fruitful. It did not, however, directly identify Walton as the person who committed the assault. Our standard is fairness, and the interest protected by this analysis is evidentiary. *Manson*, 432 U.S. at 113, 97 S.Ct. at 2252, 53 L.Ed.2d at 153. Given this, we think Walton's due process challenge notably circumscribed.

■ Moreover, we do not believe the challenged procedure unnecessarily suggestive. Sergeant Rowell was aware that Henderson had spoken to the caller only briefly and, accordingly, was clearly attempting to secure the comparison as quickly as possible, while Henderson's memory was fresh. *Cf. Salazar*, 213 N.W.2d at 494–95; *Jackson*, 387 N.W.2d at 631–32; *Johnson v. Dugger*, 817 F.2d 726, 726 (11th Cir.1987) (immediate confrontations or "showups" allow for identification while witnesses' memory is fresh). Surely under such conditions a voice "line up" would be highly impractical.

■ Even if we assumed the impermissible nature of the procedure, we think the identification was surrounded by sufficient indicia of reliability so as to render it admissible. Our criteria for this determination in cases dealing with visual identifications are well established. *See, e.g., Newman*, 326 N.W.2d at 794–95; *Mark*, 286 N.W.2d at 405–07. Applying these standards to the present situation, we hold the identification to be not so inherently unreliable so as to offend due process. Henderson was receiving a call on a 911 emergency line which suggests a high degree of attention paid to the caller. She did not equivocate in her identification of Walton as the man who had called earlier. The comparison was made thirty-three minutes after the initial call. We think the constitutional requirements were satisfied by these circumstances. The trustworthiness of Henderson's identification was properly submitted to the jury for consideration. Walton's first claim must fail.

## II. *Sufficiency of Evidence.*

Walton next claims insufficient evidence supports the verdict, referring to the unreliability of the positive identifications made by Lagerquist and Porazil. The principles which guide our review of such claims are well established and frequently stated. *See, e.g., State v. Allen,* 348 N.W. 2d 243, 247 (Iowa 1984); *State v. Freie,* 335 N.W.2d 169, 171 (Iowa 1983). Our review of the record in light of these standards convinces us that the jury verdict is sustainable and is, accordingly, affirmed. Questions of the reliability and credibility of witnesses, in which Walton grounds his present challenge, are committed by our system to the jury. *E.g., State v. Dahlstrom,* 224 N.W.2d 443, 448 (Iowa 1974).

We affirm Walton's conviction and sentence.

AFFIRMED.