# IN THE COURT OF APPEALS OF IOWA

No. 3-1204 / 13-0087
Filed August 27, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JUSTIN DAVID SIMPSON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Robert E. Sosalla, Judge.


        Justin D. Simpson appeals the sentences imposed after the jury's verdicts of guilty to sexual abuse in the third degree and lascivious acts with a child. **REVERSED AND REMANDED.**


        Mark C. Smith, State Appellate Defender, and Rachel Regenold, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Jerry Vander Sanden, County Attorney, and Nicholas Scott, Assistant County Attorney, for appellee.


        Considered by Doyle, P.J., and Tabor and Bower, JJ.

**BOWER, J.**

Justin D. Simpson appeals the sentences imposed after the jury's verdicts of guilty for sexual abuse in the third degree and lascivious acts with a child. He claims the district court violated his double jeopardy rights under the United States Constitution when the court sentenced him for both the sexual abuse conviction and the lascivious acts conviction. He also claims the court should have merged the sentences pursuant to Iowa Code section 701.9 (2011). We reverse and remand.

**I.      Background Facts and Proceedings**

Simpson is a self-employed owner of a karaoke business and was friends with thirteen-year-old M.M.'s parents. Simpson hired M.M. as a babysitter for his two children, and M.M. would often spend the entire weekend at Simpson's residence due to his late work hours. Sometime between April 1, 2011, and May 31, 2011, M.M. was babysitting for Simpson's children and was staying at Simpson's apartment while he was working.[1] During the course of the evening, Simpson sent M.M. a sexually explicit text message, and M.M. testified the text message frightened her.

Upon arriving home, Simpson, who appeared to have been drinking, sat on a couch next to M.M. Simpson initially tried to put his hand down M.M.'s pants, which M.M. thwarted without any contact between Simpson and her pubes or genitals. After trying to convince her to consent, Simpson removed M.M.'s pants and underwear, had sex with her by putting his penis in her vagina, and left

---

[1] Because M.M. did not report the incident until approximately one month later, the exact date of the incident is unknown.

her crying on the couch. The next morning he told M.M. he would lose his children if anyone found out. M.M. continued to babysit for Simpson without incident.

About a month later, M.M. discovered text messages on her mother's phone in which Simpson accused her of having a crush on him and acting inappropriately. After M.M. talked with her stepfather, she was taken to the police station and later to St. Luke's Regional Child Protection Center where she was interviewed and underwent a physical examination.

Subsequently, the State charged Simpson with one count of sexual abuse in the third degree and one count of lascivious acts with a child. Simpson was convicted by a jury on both counts and sentenced to two consecutive terms of imprisonment, each term not to exceed ten years. He now appeals.

## II. Standard of Review

To the extent that Simpson is making a constitutional double jeopardy claim, our review is de novo. *See State v. Constable*, 505 N.W.2d 473, 477 (Iowa 1993). We review Simpson's challenge that the sentences imposed violate Iowa Code section 701.9 for correction of errors at law. *State v. Reed*, 618 N.W.2d 327, 335 (Iowa 2000).

## III. Merits

In this single prosecution, the court imposed consecutive sentences on Simpson's convictions for one count of third-degree sexual abuse and one count of lascivious acts with a child. It is undisputed that both offenses "arose out of the same sex act." On appeal, Simpson claims the district court imposed illegal

sentences in violation of his double jeopardy rights under the Fifth Amendment to the United States Constitution. Related to this issue, Simpson argues the elements of third-degree sexual abuse are "subsumed" by the elements of lascivious acts with a child.[2]

"Our legislature has both the power and responsibility to describe crimes and fix punishments." *State v. Wells*, 629 N.W.2d 346, 353 (Iowa 2001). "The Double Jeopardy Clause of the federal Constitution[3] protects defendants against . . . multiple punishments for the *same offense*." *Constable*, 505 N.W.2d at 477 (emphasis added). The clause is binding on the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969). The Double Jeopardy Clause "is limited in its application" to cases in which, as here, "multiple punishments are imposed pursuant to a single prosecution." *Reed*, 618 N.W.2d at 336.

Multiple punishments may be imposed without a "double jeopardy problem" where the sentences are based on "distinct acts." *State v. Jacobs*, 607 N.W.2d 679, 688 (Iowa 2000) ("Each time the defendant improperly took funds from his client he committed a theft."). Further, by "enacting separate statutes the legislature may address 'separate evils' even when the offenses grow out of the same incident." *Id.* at 688 n.5 (quoting *State v. Butler*, 415 N.W.2d 634, 637 (Iowa 1987) (ruling the "legislature addressed separate evils" by enacting separate statutes for burglary and for the possession of burglar's tools)). Thus, it

---

[2] Based on our resolution of this case, we need not address this claim.
[3] The clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

"is well established in Iowa law that a single course of conduct can give rise to multiple charges and convictions." *State v. Velez*, 829 N.W.2d 572, 584 (Iowa 2013).

"In considering a double jeopardy claim within the multiple punishments context, we are guided by the general principle that the question of what punishments are constitutionally permissible is no different from the question of what punishments the legislature intended to be imposed." *State v. McKettrick*, 480 N.W.2d 52, 57 (Iowa 1992); *see Reed*, 618 N.W.2d at 336 (stating the multiple-punishment prohibition prevents the sentencing court from proscribing greater punishment than the legislature intended). "The courts, however, must presume that 'in the absence of a clear indication of contrary legislative intent,' the legislature ordinarily does not intend cumulative punishment." *Reed*, 618 N.W.2d at 336 (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)); *see Wells*, 629 N.W.2d at 353 ("Any doubt as to the legislative intent of the appropriate units of prosecution must be resolved in favor of the accused.").

In 1993, our supreme court discussed a defendant's double jeopardy concerns in *Constable*, 505 N.W.2d at 477-78. In 2014, our supreme court explained its *Constable* ruling:

> We determined any single physical contact was a *separate act* sufficient to meet the definition of "sex act." Therefore, when the defendant engaged in five distinct acts of physical contact, each act alone was sufficient to charge the defendant with a count of sexual abuse, and the State did not violate the defendant's double jeopardy protection.
> . . . .

> [In *Constable*] we found the legislature intended the unit of prosecution for sexual abuse . . . to be each act of physical conduct.[4]  Thus, multiple acts can constitute separate and distinct criminal offenses . . . .   [T]he legislative intent was to criminalize each act of physical conduct.

*State v. Copenhaver*, 844 N.W.2d 442, 448-49 (Iowa 2014) (citations omitted) (ruling the State was required to prove the defendant intended to commit two separate and distinct thefts to support two convictions of robbery).

In the instant case, Simpson committed only one "physical contact" or sex act—Simpson penetrated the child's vagina with his penis.  Thus, the issue is whether Simpson can be sentenced for two offenses charged under separate statutory provisions when both offenses are based on a single sex act/single physical contact.  Do the two offenses constitute the same offense for double jeopardy purposes?

**A.  Analysis Process.**  "[O]ur analysis begins with a search for legislative intent."  *See Reed*, 618 N.W.2d at 336.  If our legislative-intent analysis does not resolve the issue, "we then resort to the 'same elements' test—a rule of statutory construction—articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932)."  *Id.*  We need not resort to the same-elements test here because, for the

---

[4] The statutory definition of "sex act" or "sexual activity" at that time included:
> any sexual contact between two or more persons by: penetration of the penis into the vagina or anus; contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person; contact between the finger or hand of one person and the genitalia or anus of another person . . . ; ejaculation onto the person of another; or by use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

Iowa Code § 702.17.  The section was rewritten in 2014 to make each sex act a separately-numbered subsection.  *See* 2014 Iowa Acts ch. 1092, § 144.

reasons that follow, we think the legislature intended to prohibit cumulative punishment for a single act under the statutes at issue.

**B. Legislative Intent**. "[I]ntent may generally be gleaned from the face of the statute. 'If the statutory language is plain and the meaning is clear, we do not search for the legislative intent beyond the express terms of the statute.'" *State v. Perez*, 563 N.W.2d 625, 628 (Iowa 1997).

"Chapter 709 is a comprehensive set of laws generally defining the scope of sex acts that are deemed offensive." *State v. Meyers*, 799 N.W.2d 132, 142 (Iowa 2011). The State charged Simpson under two alternatives of third-degree sexual abuse—by "force and against the will" and by the child's age. *See* Iowa Code § 709.4(1), (2)(b). Due to the general verdict forms, it is unclear whether the jury found Simpson committed the sexual abuse by having sex by force or against the will of M.M, or by having sex when M.M. was underage. Consequently, we set out both statutory provisions below. The third-degree sexual abuse statute provides, in pertinent part:

> A person commits sexual abuse in the third degree when the person performs a sex act under any of the following circumstances:
> 1. The act is done by force or against the will of the other person, whether or not the other person is the person's spouse or is cohabiting with the person.
> 2. The act is between persons who are not at the time cohabiting as husband and wife and . . . . (b) The other person is twelve or thirteen years of age.

*Id.* Either violation is a class "C" felony. *Id.*

Our supreme court recently discussed the statutory structure of third-degree-sexual-abuse crimes in the context of a victim's alleged psychological inability to consent:

> While the categories describe fact-specific circumstances, each category continues to involve the absence of consent. Thus, consent remains the lynchpin of the crime, and the legislature has sought over the years to identify more specific circumstances of nonconsent while leaving the broader "against the will" standard in place to capture all circumstances of actual nonconsent. The structure of the statute does not foreclose psychological circumstances that could work to establish nonconsent [from being] included in the "against the will" language of Iowa Code section 709.4(1).

*Meyers*, 799 N.W.2d at 142. The *Meyers* court believed it important that "the statute as a whole expresses no limit on the conduct or circumstance that can be used to establish nonconsent under section 709.4(1)." *Id.* at 143. The court stressed that "sexual abuse today remains a crime predicated on sex acts done by imposition" and that the sex-by-imposition concept "remains at the heart of the statute." *Id.* at 143, 146 (concluding "psychological force or inability to consent based on the relationship and circumstance of the participants may give rise to a conviction under the 'against the will' element of section 709.4(1)").[5] Here, the facts show Simpson's crimes were "predicated on [one] sex act [ ] done by imposition."

We turn to the State's second charge against Simpson. The lascivious acts with a child statute provides, in pertinent part:

---

[5] In addition to finding substantial evidence to show Meyers performed sex acts against the victim's will, the court agreed substantial evidence showed Meyers coerced the victim to disrobe to satisfy his sexual desires under lascivious conduct with a minor. *Meyers*, 799 N.W.2d at 147 (citing Iowa Code section 709.14).

It is unlawful for any person sixteen years of age or older to perform any of the following acts with a child [under the age of fourteen] with or without the child's consent unless married to each other, for the purpose of arousing or satisfying the sexual desires of either of them:
1. Fondle or touch the pubes or genitals of a child.

Iowa Code § 709.8(1). A violation of this section is a Class "C" felony. *Id.* Thus, both sections manifest the intent of the legislature to punish the offenses at issue as a Class "C" felony.

We first note that neither Iowa Code section 709.4 nor Iowa Code section 709.8 contains specific language precluding cumulative punishment for the two crimes.[6] Nevertheless, we find clear legislative intent to prohibit multiple punishments for the same sex act under these two provisions.

Second, we turn again to the *Constable* case, where the court supported its ruling by examining the *Newman case* and its "related question of whether the same sex acts which constituted a sexual abuse charge could also apply toward a defendant's kidnapping charge in which sexual abuse was a necessary element." *Constable*, 505 N.W.2d at 478 (citing *State v. Newman*, 326 N.W.2d 788, 793 (Iowa 1982)). Even though Newman had performed at least two separate and distinct acts of sexual abuse and even though the State argued on appeal that only one of those acts formed the basis for the kidnapping charge, the court reversed Newman's conviction for sexual abuse "because the State had

---

[6] Examples of such express statutory language include *McKettrick*, 480 N.W.2d at 58 (explaining the statute's plain language prevents conviction for assault *with* intent and assault *without* intent to commit serious injury in single assault) and Iowa Code § 708.2(3) (expressly limiting penalty for assault with dangerous weapon in a prosecution for section 708.6 (intimidation with a dangerous weapon) or section 708.8 (going armed with intent)).

tried and submitted to the jury the sexual abuse as one continuing event." *Id.*

(citing *Newman*, 326 N.W.2d at 793 ("The prosecution from start to finish was

treated by all concerned as a single episode. The State cannot depart from that

course now.")). The *Newman* court explained:

> We do not foreclose the State's right to convict a defendant
> of both kidnapping in the first degree and sexual abuse if the case
> is presented to the jury in that way and the jury makes findings
> accordingly. A defendant should not be allowed to repeatedly
> assault his victim and fall back on the argument his conduct
> constitutes but one crime. Other jurisdictions have met this
> problem in considering whether there can be separate charges
> based on multiple sexual assaults. A number of courts have held a
> defendant may be convicted separately for each attack.[7]

*Newman*, 326 N.W.2d at 793. Again, here we have "one attack." Simpson

claims the State likewise presented its case to the jury as one sex act in opening

statements, where the prosecutor stated:

> [M.M.] went downstairs and sat on the couch. Her mom was going
> to pick her up in the morning. [Simpson] sat down next to her and
> began trying to put his hand down her pants. [M.M.] said, "No." At

---

[7] The *Newman* court cited:

> *E.g. People v. Saars*, 584 P.2d 622, 629 (Colo. 1978) (separate and
> distinct acts of sexual abuse on same victim may be prosecuted and
> punished separately even though all occurred within period of two hours);
> *Vaughan v. State*, 614 S.W.2d 718, 722 (Mo. Ct. App. 1981) (two rapes
> committed on same victim at same place within fifty-five minutes may
> constitute separate crimes if each was intended by defendant as separate
> gratification of his sexual desires); *State v. Bussiere*, 392 A.2d 151, 153
> (N.H. 1978) (defendant may be separately tried and convicted for acts of
> sexual abuse committed by different means and in different ways); *State
> v. Ware*, 372 N.E.2d 1367, 1368 (Ohio Ct. App. 1977) (convictions for
> invasions of different bodily orifices upheld as separate and distinct
> offenses although arising out of same incident); *State v. Eisch*, 291
> N.W.2d 800, 801 (Wis. 1980) (four sex acts, each of different kind and
> character, constitute four separate crimes, even when occurring at same
> location within two-and-one-half-hours); *Hamill v. State*, 602 P.2d 1212,
> 1216 (Wyo. 1979) (sexual acts, even if closely related in time and place,
> may constitute separate offenses where occurring in different ways).

326 N.W.2d at 793.

> that point [Simpson] pulled her pants off, got on top of her and sexually abused her. When he was finished, he drunkenly stumbled to the stairs leaving [M.M.] on the couch in tears and in complete shock about what just happened to her.

Simpson also claims the State presented the case to the jury as one sex act in closing statements. After our review of the record, we agree that throughout the trial the State presented its case on the basis of Simpson committing one physical sex act.

Under *Constable*, we construe the statutes at issue to determine the nature of the offense: whether the offense is accomplished by a single act, therefore allowing for multiple charges upon repetition of the proscribed act. *See State v. Schmitz*, 610 N.W.2d 514, 517 (Iowa 2000). The third-degree sexual abuse offense proscribes the defendant from performing a sex act. The lascivious acts offense proscribes the defendant from performing one specific type of sex act—"fondle or touch the pubes or genitals." Under *Constable*, each separate physical sex act can be a separate sexual abuse offense and each separate physical sex act can be a separate lascivious acts offense. In such circumstances, where the statutory offense at issue in both statutes proscribes the evil of and criminalizes a single physical sex act, under both statutes the State can charge multiple offenses for multiple physical sex acts.

But Simpson committed only one physical sex act. The sex act of placing his penis in the victim's vagina is the same sex act the State used for his act of "fondled or touched the pubes or genitals." It is undisputed that the State herein tried the case and submitted it to the jury as only one physical sex act imposed

by Simpson on M.M.[8]  When we consider (1) the evil sought to be prevented by both statutes, (2) the *Reed* presumption that "the legislature ordinarily does not intend cumulative punishment," and (3) the teachings of *Constable, Newman*, and *Meyer*, we conclude the legislature intended to prevent the evil of the imposition of the proscribed sex act—here, the same physical sex act.  It therefore follows, in the specific circumstances of this case, that Simpson, who has committed a single physical sex act, may not be convicted of and receive multiple punishments for both third-degree sexual abuse and lascivious acts. Under our statutory scheme, the legislature did not intend Simpson to be cumulatively punished.  We therefore reverse and remand to the district court for resentencing and the entry of orders consistent with this opinion.

**REVERSED AND REMANDED.**

---

[8] We note we would have a completely different case and analysis if Simpson had been successful in his initial attempt to put his hand down M.M.'s pants, depending on what part of M.M.'s body his hand was able to "touch or fondle."