# IN THE COURT OF APPEALS OF IOWA

––––––––––––––––––

No. 24-1343
Filed April 29, 2026

––––––––––––––––––

**Jessie James Jones Jr.,**
Applicant–Appellant,

v.

**State of Iowa,**
Respondent–Appellee.

––––––––––––––––––

Appeal from the Iowa District Court for Black Hawk County,
The Honorable Andrea J. Dryer, Judge.

––––––––––––––––––

**AFFIRMED**

––––––––––––––––––

Jamie Hunter of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines,
attorney for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney
General, attorneys for appellee.

––––––––––––––––––

Considered without oral argument
by Badding, P.J., Sandy, J., and Telleen, S.J.
Opinion by Telleen, S.J.

**TELLEEN, Senior Judge.**

Following his second-degree-murder conviction for the 2000 killing of Jerry Davis, Jessie Jones Jr. applied for postconviction relief in 2003. Jones subsequently amended his application and many delays in the proceedings ensued. Following a postconviction trial, the district court denied Jones's application in its entirety in August 2024. Jones now appeals the order denying his application for postconviction relief. We affirm.

## BACKGROUND FACTS & PROCEEDINGS

The State charged Jones via trial information for first-degree murder in 2000. Following trial, a jury convicted Jones of second-degree murder, a lesser included offense. Jones appealed, and we affirmed his conviction on direct appeal. *See State v. Jones*, No. 01-0822, 2002 WL 31757016, at *1–3 (Iowa Ct. App. Dec. 11, 2002). Our court summarized the facts as follows:

> On January 9, 2000, an after hours party was held at the home of Sandy Kuykendall at 701 Logan Street, Waterloo, Iowa. Jerry Lee Davis arrived at the party after borrowing a car and $100. He parked across the street and came to the party in search of crack cocaine. He approached Sheila Cole, who was taking admission money for the party, a number of times asking for change for his $100 bill. Cole last saw Davis walking to the back of her house with Jones.

> Meanwhile, a large crowd had gathered in front of the Kuykendall home and across the street by a funeral home. Charvis Bentley and Terrell Manning were involved in an incident, and Bentley discharged a rifle as it was grabbed from him near the funeral home. He was then forced into a car and driven away. A second shot was then heard from behind the Kuykendall home. Davis ran from behind the house and disappeared. He was found clutching the $100 bill about a block away. He bled to death from a gunshot wound to his leg. A trail of blood ran from the Kuykendall home to Davis.

> . . . .

2

> . . . After Davis ran, Jones came from behind the Kuykendall home and spoke to Justin Cole. He had a pistol in his hand and told Justin, "I should have got a hundred dollars from this hype" and "I shot at him. I think I shot him in the leg. Man, I could have had one hundred dollars." He put the pistol in the waistband of his pants and went inside the Kuykendall house. He later put the pistol and some crack cocaine in Syphina Anderson's purse. He rode in a car with Anderson and her friends to the Waterloo Holiday Inn. In the car, he took the pistol out of Anderson's purse. The pistol was put under a bed in a room at the hotel. When Jones left the hotel he had the pistol in his waistband.

*Id.* at *1–2.

Following the supreme court's denial of further review, procedendo was issued on March 19, 2003. Jones filed an application for postconviction relief on September 3, 2003. In that application, Jones raised the following grounds: (1) the verdict was contrary to the weight of the evidence; (2) the district court erred in failing "to require disclosure of the identity of a citizen informant who presented potentially exculpatory information;" (3) his due process rights under the Fourteenth Amendment were violated by the State and/or Waterloo Police Department's suppression of "material police reports;" (4) his trial counsel provided ineffective assistance by failing to request a continuance, make adequate objections, or call Officer Keith Rogers testify; and (5) his appellate counsel was ineffective for failing to timely raise the issues of his deprivation of constitutional rights and trial counsel's failure to make adequate objections.

Since then, Jones has amended his petition many times, the district court has granted various continuances requested by both parties, and several of Jones's claims have been dismissed. New postconviction-relief counsel was eventually appointed in 2018, and a final amended petition was filed in January 2022.

Under the final petition, Jones alleged trial counsel provided ineffective counsel by failing to (1) "object or by other means preserve the issue of suppressed police reports"; (2) "subpoena Officer Keith Rogers at trial;" (3) "conduct a sufficient pretrial investigation"; (4) investigate or depose Sheila Renee Cole which resulted in an ineffective cross-examination at trial"; (5) "properly object, file a motion in limine, or prevent by other means, prosecutorial misconduct that misrepresented evidence of an automatic handgun"; (6) "properly object [to] . . . the admissibility of the Justin Cole video"; (7) "challenge the [t]rial [c]ourt decision to conduct an in camera interview of the officer who received the information rather than an in camera interview of the actual informant as a basis to deny the informant[']s name"; (8) "properly object [to] . . . Officer Moller's false testimony concerning Leah Fisher and improper conversations"; (9) object to the jury instructions because they violated Jones's due-process rights; and (10 )"by failing to withdraw as direct appeal counsel." Jones also alleged (11) ineffective assistance of trial counsel "by making inaccurate statements and comments in the presence of the jury and during closing arguments," which resulted in loss of credibility with the jury; and (12) ineffective assistance of counsel in both trial and appellate capacity for failure challenge sufficiency of the evidence concerning cause of death. Jones lastly alleged cumulative error. Trial was held in April 2023.

The district court denied Jones's application in whole. Jones now appeals, raising many of the same claims brought before the district court.

## STANDARD OF REVIEW

Postconviction-relief proceedings are generally reviewed for correction of legal error. *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011).

We give de novo review to claims of ineffective assistance of counsel, as well as other constitutional claims raised in postconviction proceedings. *Id.*

## DISCUSSION

Jones divides his issues on appeal into two categories: his claim of ineffective assistance of counsel and his claim that his sentence amounts to cruel and unusual punishment.

The State contends that the claims first raised in Jones's amended applications are time-barred. The State argues that, although Jones's original application was filed within the statutory period, the claims raised in amended applications after the statutory period had run should not relate back to the original application. The district court did not rule on the State's arguments that certain claims were time-barred. But because we can resolve Jones's claims on the merits, we assume without deciding that all his amended claims "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in" his original application. *See* Iowa R. Civ. P. 1.402(5).

## I.    Ineffective Assistance

Jones raises three issues which he contends amounted to ineffective assistance of counsel: his trial counsel's failure to (1) call Officer Keith Rogers to testify at trial, (2) raise prosecutorial misconduct, and (3) object to the prosecutor's demonstrative use of and reference to an automatic handgun.

"To establish an ineffective-assistance claim, the defendant must show that (1) his counsel failed to perform an essential duty, and (2) prejudice resulted." *State v. Miranda*, 672 N.W.2d 753, 762 (Iowa 2003) (cleaned up). Counsel fails to perform an essential duty by "perform[ing]

below the standard demanded of a reasonably competent attorney." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) (cleaned up). Yet due to the difficulty in "crafting a trial strategy," we strongly presume "counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *State v. Harrison*, 914 N.W.2d 178, 206 (Iowa 2018) (quoting *Nguyen v. State*, 878 N.W.2d 744, 752 (Iowa 2016). Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ledezma*, 626 N.W.2d at 142 (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citation omitted). If the applicant fails to prove one prong of this test, we need not address the other prong. *See Harrison*, 914 N.W.2d at 206.

Jones first contends that trial counsel was ineffective in not calling Officer Keith Rogers to testify at trial. Officer Rogers filed a department intelligence report which disclosed that he had spoken with a confidential informant that told him that the department should be looking for Charvis Bentley, a cousin of Jones who had "shot up" a vehicle earlier on the night of the killing. The informant was not present at the house that night. The report confirmed that Officer Rogers had alerted his chain of command and that the department was "already looking for Bentley." Jones moved to disclose the identity of the informant, noting that Officer Rogers had spoken to the informant's past reliability, and that evidence regarding a shooter other than Jones "is crucial to the defense." As a result of Jone's counsel's efforts, the district court engaged in an in-camera interview of Officer Rogers. That motion was denied, with the district court concluding "the information

6

provided [by the informant] was general in nature" and "the informant did not say that anyone claimed to have been a witness to or participant in the shooting."

In Jones's view, the informant's tip was "relevant to law enforcement's investigation and the fact that they had received information about a different possible suspect that they did not follow up on." Jones claims that "the State had another suspect, but did not even attempt to contact the source of the [informant]'s information and did nothing to rule the suspect out."

Jones's argument fails for several reasons. First, the district court rightly observed that not only did Jones have "more persuasive avenues" for raising doubts about the thoroughness of the department's investigation, but his trial counsel "used those avenues during the trial to support their argument that the investigating officers focused only on implicating Jones." We will not label trial counsel ineffective for the failure of their trial strategy after counsel chose that strategy from the "equally hazardous options available to [them]." *See State v. Newman*, 326 N.W.2d 788, 795 (Iowa 1982). Further, while it may be true that Officer Rogers did not further investigate Bentley, he also testified in his deposition that he did not know what, if any, investigation was conducted by the department. And Jones provides no explanation for why Rogers's testimony would show otherwise. So even if Officer Rogers had testified, the record does not show it would have changed the outcome in this case. Officer Rogers could not provide definitive information about the extent of the department's investigation into Bentley. Lastly, the district court noted that Officer Rogers's testimony regarding the informant's tips would be excluded as hearsay within hearsay. This may explain trial counsel's strategy to seek out the informant rather than rely on

testimony from Officer Rogers. Counsel's tactical decision to not call Officer Rogers was not ineffective assistance.

Jones next faults trial counsel for failing to assert the prosecutor engaged in misconduct by failing to challenge Officer Lynn Moller's testimony and conduct with witnesses. Jones claims that Officer Moller had been "badgering witnesses and trying to influence their testimony," a claim his counsel raised before and after trial. Prior to trial, the district court declined to make a finding on that claim but stated that "in the interest of ensuring both the fairness of the process and the appearance of fairness," Officer Moller was not to have substantive conversations with witnesses relating to their testimony—because "emotions were running high." Jones further takes issue with the prosecutor's failure to challenge what he characterizes as Moller's lies during his testimony at trial.

We see a few problems with the misconduct claim. First, the district court never made a finding that Officer Moller was badgering witnesses. So we cannot say that it was ineffective assistance for defense counsel not to raise prosecutorial misconduct claims in relation to those purported acts, especially when defense counsel *did* raise prosecutorial misconduct in Jones's post-trial motions. In his post-trial motions, Jones's trial counsel raised prosecutorial misconduct challenges as to Officer Moller's conduct with witnesses, including that Officer Moller disobeyed the court's prohibition on such conduct. And as for Jones's claims that his trial counsel should have challenged Officers Moller's "lying" through a prosecutorial misconduct claim—his trial counsel did challenge the purported lies through a prosecutorial misconduct claim. The trial court not only declined to conclude that Officer Moller perjured himself but directly addressed Jones's prosecutorial misconduct claim as to that testimony. Further, trial counsel

directly attempted to use the purported lies to undermine the State's case in Jones's closing argument:

> And you know what? We found out he was lying. You found out Officer Moller was lying even to you when he sat here. He tried getting you to believe that several of the young girls from the high school had claimed to hear something from [a witness], and you know that's not true, and he knew it wasn't true when he looked at you and tried to get you to believe it. Officer Moller lied on the stand.

As the postconviction court observed,

> [T]he trial judge addressed Jones'[s] trial attorneys' arguments that Moller was badgering witnesses, trying to influence their testimony, and had participated in a conversation with a witness in violation of a court order. The trial judge also addressed Jones'[s] trial attorneys' arguments that Moller had given perjured testimony. The trial judge made extensive findings of fact, correctly applied the law, and denied Jones'[s] post-trial motion based on the claims of prosecutorial misconduct.

Like the postconviction court, we decline to find trial counsel provided ineffective assistance by failing to also assert prosecutorial misconduct in relation to Officer Moller's acts and testimony.

Jones also alleges prosecutorial misconduct via a *Brady* claim, asserting that his trial counsel was ineffective in failing to mount a prosecutorial misconduct challenge to the prosecutor's late disclosure of police reports. *See Brady v. Maryland*, 373 U.S. 83 (1963). Jones claims the prosecution did not produce six police reports or memos until July 19, 2000, six days before the commencement of trial. *Brady* claims require the defendant to "prove by a preponderance of the evidence (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt." *Moon v. State*, 911 N.W.2d 137, 145 (Iowa 2018) (cleaned up).

Nothing in the record suggests that prosecution suppressed the reports at issue. The county prosecutor did not learn of the memoranda or reports until six days before trial. Upon learning of the reports' existence, the county attorney immediately notified the defense. Jones does not identify a specific theory of suppression by the prosecutor. We do not find any ineffective assistance in counsel's failure to assert a claim of prosecutorial misconduct for this purported suppression of evidence.

Jones additionally argues the trial counsel was ineffective in failing to object to the prosecutor's suggestions that Jones used an automatic handgun, as well as the prosecutor's demonstration of an actual handgun during closing arguments. Jones argues there was no evidence that the weapon used in the killing was an automatic handgun. We disagree with Jones's assessment. As the district court explained, "[a] prosecutor is permitted to argue the reasonable inferences and conclusions to be drawn from the evidence." *See State v. Graves*, 668 N.W.2d 860, 874 (Iowa 2003). Part of the State's theory of the case is that Jones shot Davis with an automatic handgun. Justin Cole gave a statement that to police that Jones was in possession of a handgun the night of the shooting. The police department recovered a .380 auto handgun shell casing near a van at the shooting address. The criminalist with the Iowa Division of Criminal Investigation stated that the round was designed for and likely fired from a .380 auto pistol. Lastly, the district court found Jones's claims that the prosecutor "brandished" the firearm and put up a "movie scene" to be exaggerated and not credible. During closing statements, the prosecutor did not suggest to the jury that the prop was the actual murder weapon. Thus, counsel was not ineffective in failing to challenge the prosecutor's comments or conduct relating to an automatic handgun.

Jones also asserts that trial counsel was ineffective in making various comments and inaccurate statements that were detrimental to his defense during closing arguments. Trial counsel referred to a deputy that had accompanied Jones through the trial and informed the jury that Jones had not seen his family in the past five months. Jones argues this suggested to the jury that he had been incarcerated during the pendency of the case and that Jones was dangerous due to the deputy assigned to him. The district court correctly concluded that "the deputy's presence was 'no secret'" and that jurors are presumed to "possess reason and common sense." *See Pena-Rodriguez v. Colorado*, 580 U.S. 206, 211 (2017) (noting jurors "undertake[] deliberations that are honest, candid, robust, and based on common sense."). The district court explained that "[j]urors know that murder in the first degree is a serious, important charge." It is not a great revelation that a first-degree murder suspect would be kept in State custody, even with a presumption of innocence.

Jones also takes issue with his counsel's references to young female witnesses as "those little hotel girls." Again, the district court concluded that this was "part of a larger strategy to convince the jury that fifteen-year-old [A.G.], sixteen-year-old [S.A.], sixteen-year-old [L.M.], and [E.S.] were less credible witnesses than [the other high school witness, L.F.]." But "[m]iscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Ledezma*, 626 N.W.2d at 143. Trial counsel's strategy did not rise to ineffective assistance merely because it did not work. Jones also asserts error in his trial counsel's claim that L.F. was fifteen years old when she was actually eighteen years old,. The statement was in error, but counsel correctly stated her age in his opening statement and the prosecutor corrected Jones's counsel's remark, stating "[L.F.] is not fifteen, she's eighteen. She's an adult." The prosecutor

further corrected trial counsel's claim that S.R. "lied on the scene," stating, "Counsel made something of Stephanie lying at the scene. Nobody even talked to her at the scene. Nobody even talked to her, so I don't know what those comments were about." In both instances, the incorrect statements that trial counsel made in reference relating to two of several dozen witnesses were directly and unambiguously corrected before the end of trial. We find no ineffective assistance in trial counsel's comments during closing arguments.

Jones claims trial counsel was ineffective in failing to object to Justin Cole's testimony under *State v. Turacek*, 456 N.W.2d 219, 225 (Iowa 1990), and that appellate counsel was ineffective on failing to raise the materiality, necessity, and interests-of-justice grounds under the residual hearsay exception. His *Turacek* argument is not preserved for our review as the district court did not conduct a *Turacek* analysis, and Jones did not request a ruling after the district court failed to do so. *See Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002). Moreover, our court already considered and rejected on direct appeal Jone's trustworthiness argument in his broader contention that admission of Cole's video statement was improper residual hearsay. *See Jones*, 2002 WL 31757016, at *1–2. And we agree with the district court that the materiality, necessity, interests-of-justice, and notice elements of the residual exception do not weigh against the video's admission either. *See State v. Skahill*, 966 N.W.2d 1, 10 (Iowa 2021). The district court concluded that "the videotaped statements were material because, if believed, they show the identity of a possible perpetrator, his opportunity to commit the crime, and his means of committing the crime." The statements were necessary as they contained "detailed information about the statements and about Cole's manner in giving them" which "is now available only from the videotape because Cole has recanted" those prior statements. The

district court also noted the "ample notice" provided to Jones that the statements would be used. Lastly, Jones was available for cross-examination about his in- and out-of-court statements.

Jones takes issue with his appellate counsel's "failure to challenge district court's failure to interview confidential informant to determine whether his name should be disclosed to the defense." This claim is a creatively repackaged version of the argument we rejected on direct appeal that Jones should have been given the name of the aforementioned confidential informant. *See Jones*, 2002 WL 31757016, at *2. Jones's argument on this point again references the importance of the informant's identity. We noted on direct appeal that "the informant was not a witness to the crime and, in fact, had no knowledge other than rumor to support his statements. He did not testify and neither did the officer to whom he reported the rumors." Thus, there was no ineffective assistance in appellate counsel's failure to challenge the district court's failure to interview the informant.

Because we have not identified any individual instances of ineffective assistance of counsel, we also find no cumulative error. *See State v. Vanderflught*, No. 22-0569, 2023 WL 5602659, at *3 (Iowa Ct. App. Aug. 30, 2023) (finding no basis for cumulative error where no individual error existed). Jones did not suffer from ineffective assistance of counsel due to his trial or appellate counsel's acts or omissions.

## II.    Cruel and Unusual Punishment

Jones lastly argues his fifty-year sentence amounts to cruel and unusual punishment due to only being eighteen years old at the time he committed the murder, as well as his difficult upbringing, and his good conduct in prison. *See* U.S. Const. amend. VIII; Iowa Const. art. I, § 17. Jones concedes that "the Iowa Supreme Court's decision in *Dorsey v. State*, 975 N.W.2d 356

(Iowa 2022), upholds a bright-line constitutional distinction between juvenile offenders and adult offenders for purposes of article I, section 17." But he contends that "*Dorsey* d[oes] not foreclose challenges to lengthy mandatory minimum sentences for 18-year-olds as being grossly disproportionate." Jones's argument does not logically follow. If the supreme court has drawn a bright line between juveniles and adults—and an eighteen-year-old is indeed an adult—any successful claim attacking an adult's sentence as grossly disproportionate would apply equally regardless of the adult defendant's age. Thus, Jones cannot use his age as a basis for his argument that his sentence was grossly disproportionate. For these purposes, his age is simply "adult."

Jones also points to his change as a person in prison. But his conduct in prison in 2023 cannot serve as a basis for finding that a 2001 court imposed a cruel and unusual punishment. The trial court had no way to peer twenty years into the future. This leaves Jones's claims that his "tumultuous" childhood created "the characteristics of youth that would justify a sentence below the mandatory minimum." We balance "the gravity of the crime against the severity of the sentence," considering both "the penalties the legislature has established" for the crime, as well as "the unique features of [the] case." *Id.* at 364 (citations omitted). Jones's sentence was permitted and controlled by Iowa Code section 707.3 (2000), which required the jury to find that Jones killed Davis with malice aforethought. His sentence was not cruel and unusual punishment under the Iowa or U.S. Constitutions.

**AFFIRMED.**