# IN THE COURT OF APPEALS OF IOWA

No. 16-1855
Filed October 24, 2018

**RICCO FOUNTAIN THIGPEN,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Mary E. Chicchelly, Judge.

Ricco Thigpen appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**

John G. Daufeldt of Daufeldt Law Firm, PLC, Conroy, for appellant.

Thomas J. Miller, Attorney General, and Zachary C. Miller, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

A man made the acquaintance of two other men at a club in Cedar Rapids. He asked the two for a ride, directed them to an alleyway, and robbed them at gunpoint. Following the incident, Cedar Rapids police presented the two men with photo arrays. Both identified Ricco Thigpen as the person who robbed them.

The State charged Thigpen with two counts of first-degree robbery. Thigpen moved to suppress the photo identifications on the ground the "photo line-up procedures violated [his] due process right[s]" under the United States and Iowa Constitutions. At the suppression hearing, Thigpen highlighted differences between his photo and the others in the array. The district court acknowledged the disparities but concluded "[d]ue process did not require police to scour their files to come up with a photo array that would eliminate all subtle differences between individuals." (internal quotations and citation omitted). The court denied the suppression motion, and the case proceeded to trial.

At trial, both men who were robbed reaffirmed their prior identifications of Thigpen. The jury found Thigpen guilty as charged.

Thigpen appealed his judgment and sentence. He asserted in part that the district court should have suppressed the photo identifications. *See State v. Thigpen*, No. 07-0359, 2008 WL 5003746, at *1 (Iowa Ct. App. Nov. 26, 2008). This court rejected the claim. We reasoned, "[T]here was a reasonable effort to harmonize the photographs selected in the line-up and the photo line-up was not impermissibly suggestive, nor was there a substantial likelihood of misidentification." *Id.*

Thigpen filed a postconviction-relief application. He claimed his trial attorney was ineffective in failing to call an eyewitness-identification expert at the suppression hearing and at trial. The district court denied the application following an evidentiary hearing.

On appeal, Thigpen reprises the arguments he made in the district court. To prevail, he must show (1) deficient performance by counsel and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

We begin with the suppression ruling. In evaluating the claimed need for an expert at the suppression hearing, we consider our precedent on photo identification procedures. "The analysis of an undue suggestiveness claim is separated into two parts. The first consideration is whether the out-of-court identification procedure was 'impermissibly suggestive.' If so, the totality of the circumstances must be examined to determine whether the procedure gave rise to 'a very substantial likelihood of irreparable misidentification.'" *State v. Rawlings*, 402 N.W.2d 406, 407 (Iowa 1987) (citations omitted); *see also State v. Nagel*, 458 N.W.2d 10, 12 (Iowa Ct. App. 1990) (same).

At the postconviction-relief hearing, Thigpen's attorney testified to his criminal law experience and his familiarity with the photo-identification process. Although he lost his file and recalled few details of Thigpen's case, he agreed eyewitness identification "was a significant issue in this case."

The attorney's pretrial cross-examination of the officer who prepared and presented the photo arrays confirms his understanding of the photo-identification process. During the suppression hearing, the attorney (1) underscored possible weaknesses in the parameters the officer used to select the photos, (2) elicited an

admission that the officer did not have the men sign and date an admonition explaining the identification process, (3) confirmed that the officer had no way of knowing whether the second man conferred with the first prior to making his identification, and (4) established that the photos were not reshuffled before the second identification.

Certainly, an expert could have been called to explain the absence of a double-blind photo identification process, in which the officer presenting the photo array does not know the suspect's identity. *See* Gary L. Wells & Deah S. Quinlivan, *Suggestive Eyewitness Identification Procedures and the Supreme Court's Reliability Test in Light of Eyewitness Science: 30 Years Later*, 33 Law & Hum. Behav. 1, 8 (2009) ("The . . . effects of the tester on the person being tested are the reason that double-blind procedures are used in scientific experimentation."); *see also State v. Senn*, 882 N.W.2d 1, 62 (Iowa 2016) (noting "psychological research has identified several areas where procedural suggestiveness can subtly influence witnesses to identify the suspect—these problems include pre-lineup instructions, the composition of the lineup, and the behavior of the official administering the lineup, in addition to other problems"). But our courts have not required this type of procedure. To the contrary, the Iowa Supreme Court upheld an identification made on the heels of an officer's statement that the photo array included a suspect. *See State v. Neal*, 353 N.W.2d 83, 87 (Iowa 1984). Here, the admonition the officer read to the men stated the array "may or may not contain a picture of the person who committed the crime being investigated." The admonition alleviated concerns of undue pressure by the officer.

Thigpen also argues an expert could have testified to the unreliability of the first man's cross-racial identification. *See, e.g.*, *Long v. State*, No. 09-1841, 2011 WL 2420821, at *3 (Iowa Ct. App. June 15, 2011). But the second man who identified Thigpen was of the same race as Thigpen, undermining the probative value of this type of testimony. *Cf. State v. Brooks*, 540 N.W.2d 270, 272 (Iowa 1995) (finding no prejudice in counsel's failure "to secure appointment of an expert witness to testify to the problems of 'cross-racial identification'" because the court made it clear the testimony would have been disallowed).

Finally, an expert might have reinforced the points counsel made about the differences in the photos, including Thigpen's skin color. But the admonition read to the men informed them the photos "might not always depict the true complexion of a person." And our precedent holds that "even rather startling differences between defendant's characteristics and those of others depicted in a photo display have not resulted in a finding of suggestiveness." *Neal*, 353 N.W.2d at 88 (rejecting assertion that the inclusion of only four snapshots and the "noticeably darker background" in his snapshot rendered the array impermissibly suggestive); *Nagel*, 458 N.W.2d at 13 (noting physical differences among the individuals included in a photo array but declining to find the array impermissibly suggestive); *see also State v. Osborn*, No. 04-0546, 2005 WL 1397212, at *1 (Iowa Ct. App. June 15, 2005) ("We disagree that Osborn was the only fair-skinned man in the array but, even if he was, this type of difference in physical appearance has not supported a finding of suggestiveness.").

At the end of the day, "the question of whether or not to call an expert witness is a matter of trial strategy." *Heaton v. State*, 420 N.W.2d 429, 432 (Iowa

1988).  We conclude counsel exercised reasonable trial strategy in declining to call an expert at the suppression hearing.

We turn to the question whether counsel was ineffective in failing to call a trial expert on eyewitness identifications.  At trial, the first person who was robbed testified he picked Thigpen out of the photo array "right away."  His identification was preceded by "probably 45 minutes" of interaction at the club with the person who robbed him and "probably 15 minutes" in the car.  He testified "there's no doubt" the person he picked from the photo array was the person who robbed him.

The second person similarly testified he "immediately recognized" Thigpen from the photo array.  Although his description of Thigpen differed slightly from that of the first eyewitness, as did the description provided by a third witness, it was up to the jury to sort out these differences.  *See State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006); *see also State v. Shorte*r, 893 N.W.2d 65, 74 (Iowa 2017) (noting "the strength of the identity evidence . . . is a question for the jury").

Apparently recognizing the jury's role in assessing witness credibility, Thigpen's attorney testified his strategy was to highlight the discrepancies in the witnesses' descriptions of his client.  He explained, "I just felt if we were going to trial that the descriptions provided by the three State's witnesses I thought were of such a variance with Mr. Thigpen's appearance that we didn't need an expert."

Notably, the jury was instructed on factors to consider in evaluating the reliability of eyewitness identification, including "the way in which the defendant was presented to the witness for identification."  The inclusion of this instruction obviated the need for an expert.  *See State v. Jordan*, No. 11-0431, 2013 WL 750137, at *2 (Iowa Ct. App. Feb. 27, 2013) (noting "[t]he jury had 'the necessary

framework to assess'" the identification).  We conclude counsel exercised reasonable trial strategy in declining to call an eyewitness identification expert at trial.

We affirm the district court's denial of the postconviction-relief application.

**AFFIRMED.**